**In the Matter of T.R., J.M., C.R. and C.R., Appellees.**

**Appeal of A.W., Appellant.**

Superior Court of Pennsylvania.

Submitted July 17, 1995.
Filed Oct. 5, 1995.

Edward Michael Flannery, Philadelphia, for appellant.

Donella Shaffer, Public Defender, Philadelphia, for appellees.

Vernette Dow, Assistant City Solicitor, for Department of Human Services, participating party.

Thomas H. Purl, III, Philadelphia, for C.R., participating party.

William E. Gibbons, Philadelphia, for Community Legal Services, Amicus Curiae.

Samuel H. Isreal & Frank P. Cervone, Philadelphia, for Support Center for Child Advocates, Amicus Curiae.

Before KELLY, JOHNSON, and CERCONE, JJ.

KELLY, Judge:

In this opinion, we are called on to determine whether the trial court, in the context of performing a juvenile dependency dispositional review, may order the mother of adjudicated dependents to undergo a psychological evaluation against her wishes and disclose the results of the evaluation to interested parties. We hold that such an order is consistent with the purposes of the Juvenile Act and does not violate the mother's constitutional right to privacy. Accordingly, we affirm.

The relevant facts and procedural history of this appeal are as follows. This case involves appellant's two-year-old son, T.R., who was injured by rough horseplay by his nine and five-year-old siblings, J.M. and C.R. T.R. was born on June 16, 1991. The Philadelphia Department of Human Services ("DHS") became aware of T.R.'s family in June of 1986 when DHS received a Child Protective Services ("CPS") report alleging that T.R.'s older brother, J.M., had suffered a spiral fracture while in appellant's care. On two occasions in April of 1992, T.R., at that time ten months old, was treated at Children's Hospital of Philadelphia for eye injuries caused by a blunt object like a finger or cigarette.

On April 16, 1992, the Honorable Nicholas A. Cipriani issued a restraining order for T.R. at the request of DHS. As a result, T.R. was temporarily committed to DHS. On May 17, 1993, the Honorable Thomas A. Dempsey adjudicated .T.R. dependent with DHS supervision in appellant's home.

Renee Johnson, employed by Bethanna Social Service Agency, made weekly visits to appellant's home beginning in October of 1993. (N.T. 5/13/94 at 54–55). One of Ms. Johnson's duties was to discuss parenting

with appellant. (*Id.* at 58). Another duty was to discuss with appellant appropriate disciplinary strategies for appellant's children. (*Id.*). Ms. Johnson testified that appellant failed to cooperate with respect to the parenting classes; appellant was asked to attend parenting classes but failed to do so. (*Id.*). Additionally, Ms. Johnson testified that she and a supervisor informed appellant about the inappropriate use of extensive time-out for the younger children;[1] nevertheless, appellant did not comply with the proper way of using the time-out disciplinary technique. (*Id.* at 59). For example, during some of Ms. Johnson's visits to appellant's home, Ms. Johnson witnessed appellant inappropriately disciplining her children by sitting them still in the hallway for extended periods of time, even the entire time of Ms. Johnson's visit. *Id.*

On April 19, 1994, at a hearing before the Court of Common Pleas, evidence was presented that raised serious concerns for the trial court as to appellant's mental health status and her ability to care for and protect her children. The evidence presented included the testimony of Mr. Nelson Hairston, a DHS social worker who testified that T.R. had suffered many bodily injuries, including four fractured ribs, at the hands of his two older brothers and that appellant failed to protect T.R. Additionally, Mr. Hairston testified that T.R. had previously suffered the aforementioned eye injuries that were caused by some kind of blunt object.

At the conclusion of the testimony, the trial court ordered appellant to submit to a psychological evaluation. Appellant objected to the psychological evaluation and the disclosure of its results; additionally, appellant requested that the trial court review the evaluation *in camera*. As a result, the trial court ordered the parties to submit memoranda of law on or before the next hearing date of May 12, 1994 on the issue of whether the trial court had the authority to review the evaluation *in camera* without disclosing

the results of the evaluation to the interested parties.

DHS arranged for appellant to be evaluated on May 12, 1994 at the Family Court Building in Philadelphia by licensed clinical psychologist, Sol Barenbaum, Ph.D., because she missed a prior appointment with a psychologist. After the psychological evaluation was performed, appellant's counsel again objected, questioning the court's authority to compel the evaluation. As a result of this objection, the trial court ordered Dr. Barenbaum to prepare a written report pursuant to said evaluation and to deliver it directly to the trial court in a sealed envelope. In addition, the trial court again ordered counsel for the interested parties to submit memoranda of law on the issues of whether the trial court had the authority to compel appellant to submit to a psychological evaluation and, if so, whether a report made pursuant to said psychological evaluation may be released to the interested parties.

At the hearing on May 12, 1994, after the psychological evaluation issue was heard, DHS requested that the trial court grant a restraining order for all four of appellant's children. Based upon the evidence presented, the trial court found that T.R.'s continuation in appellant's home would be contrary to the welfare of T.R. and his siblings and that DHS made appropriate, reasonable efforts to prevent placement, and thus granted a restraining order for the children who were temporarily committed to DHS.[2]

On September 29, 1994, the trial court held in part that it had the authority to compel appellant to submit to a psychological evaluation and that the psychological report prepared pursuant to the psychological evaluation could be released to the interested parties. (N.T. 9/29/94 at 3). At appellant's request, the trial court stayed the order for thirty days to permit the parties to appeal. (*Id.* at 13). This appeal ensued.

Appellant presents the following issues on appeal:

---

1. Time-out is a form of parental discipline whereby the child is asked to stop what he/she is doing for a while and to take a break. (N.T. 5/13/94 at 59).

2. On July 22, 1994, T.R. was fully recommitted to DHS. On July 27, 1994, J.M., C.R., and C.R., T.R.'s siblings, were adjudicated dependent and fully recommitted to DHS.

1. DID THE TRIAL COURT ERR IN RULING THAT AT A DISPOSITIONAL REVIEW HEARING UNDER THE JUVENILE ACT, THE COURT HAD THE AUTHORITY TO COMPEL A PARENT TO SUBMIT TO A PSYCHOLOGICAL EVALUATION?

2. DID THE TRIAL COURT ERR IN RULING THAT AT A DISPOSITIONAL REVIEW HEARING UNDER THE JUVENILE ACT, THE COURT HAD THE AUTHORITY TO COMPEL A PARENT TO SUBMIT TO A PSYCHOLOGICAL EVALUATION AND RELEASE THE TESTING, EVALUATION AND PSYCHOLOGICAL REPORT TO THE INTERESTED PARTIES?

Appellant's Brief at 6.

■ Before we address appellant's issues, we will discuss whether this Court possesses subject-matter jurisdiction over this appeal. An order that is separable from and collateral to a cause of action may become appealable under certain circumstances. *Hutchison by Hutchison v. Luddy*, 417 Pa.Super. 93, 107, 611 A.2d 1280, 1287 (1992) (citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). The three prongs of the *Cohen* test must be satisfied in order for this order to be appealable. First, the order appealed must be separable from and collateral to the main cause of action. Second, the right involved must be too important to be denied review. Third, the question presented must be that if review is postponed until a final judgment is rendered in the case, the claimed right will be irreparably lost. *Id.* (citing *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978); *Kronz v. Kronz*, 393 Pa.Super. 227, 574 A.2d 91 (1990); *Beasley v. Beasley*, 348 Pa.Super. 124, 501 A.2d 679 (1985)).

■ Instantly, the order of the trial court that the psychological evaluation for appellant is appropriate and that the report made pursuant to the psychological evaluation may be released to interested parties is separable and collateral to the main cause of action, namely the disposition of T.R. Therefore, the first prong has been satisfied. Second, the right that appellant asserts, *i.e.* her right to privacy with respect to her reputation, is too important to be denied review. *See* Article 1, § 1 of Pennsylvania Constitution.[3] Therefore, the second prong has been satisfied. Finally, if review is postponed until after a final judgment rendered on the question of the disposition of T.R., the opportunity to prevent disclosure of appellant's personal information obtained from the psychological evaluation to interested parties will have disappeared. Therefore, the third prong has been satisfied. Thus, appellant's appeal to this Court is entirely proper.

The first issue raised by appellant is whether the trial court erred in ruling that at a dispositional review hearing under the Juvenile Act, the trial court had the statutory authority to compel appellant to submit to a psychological evaluation. In order to resolve this issue, we must interpret the language of the Juvenile Act with respect to the express purposes of the Act.

The purposes of the Juvenile Act are set forth in 42 Pa.C.S.A. § 6301(b), which provides in relevant part as follows:

(b) Purpose.—This chapter shall be interpreted and construed as to effectuate the following purposes:

(1) To preserve the unity of the family whenever possible and to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of the chapter.

\*   \*   \*   \*   \*   \*

(3) To achieve the foregoing purposes in a family environment whenever possible, separating the child from parents only when necessary for his welfare or in the interest of public safety.

The scope of the provisions of the Juvenile Act covers "proceedings in which a child is

**3.** Article 1, § 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasibly rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and *protecting* property and *reputation,* and of pursuing their own happiness." (Emphasis provided).

alleged to be delinquent or dependent." 42 Pa.C.S.A. § 6303(a)(1). A dependent child, for the purposes of this appeal, is defined by the Juvenile Act as a child who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals[.]" 42 Pa.C.S.A. § 6302. All four children in the instant appeal, T.R., J.M., C.R., and C.R. were adjudicated dependent.[4]

Section 6351 of the Juvenile Act governs the court's disposition of a dependent child. The pertinent portions of Section 6351 read as follows:

> (a) **General rule.**—If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the protection and physical, mental, and moral welfare of the child:
>
> (1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.
>
> (2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:
>
>> (i) Any individual resident within or without this Commonwealth who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.
>>
>> (ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.
>>
>> (iii) A public agency authorized by law to receive and provide care for the child.

Finally, 42 Pa.C.S.A. § 6339 focuses on investigations and reports in writing, concerning the child's family, that may be made and given to the court. Section 6339(a) permits the court to direct that social studies and reports be made of the child, his family, environment, and all matters relevant to disposition of the case.[5]

To interpret the aforementioned statutory provisions, we are guided by the well-established principles of statutory construction. *See* Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1501 *et seq.* In particular, we must keep in mind that the Juvenile Act, a statute which is protective in nature and which addresses diverse types of conduct by both children and their parents alike, is by necessity drawn broadly. *Commonwealth v. Marlin*, 452 Pa. 380, 386, 305 A.2d 14, 18 (1973). Appropriately, the Juvenile Act falls into that category of legislation that must be construed liberally to effect its objectives and to promote justice; thus, it does not lend itself to strict construction. *See* 1 Pa.C.S.A. § 1928(a), (b). Therefore, individual provisions of the Juvenile Act should not be read in the abstract; each provision must be construed with a view to its place in the entire legislative structure of the Act. *In Interest of M.L.E.*, 429 Pa.Super. 248, 250, 632 A.2d 329, 330 (1993); *see also In Interest of Jones*, 286 Pa.Super. 574, 429 A.2d 671 (1981) (in construing statute, sections must be read

---

4. We note that this appeal arises solely from the trial court's collateral orders as to disposition and does not challenge the propriety of the underlying dependency adjudications. As such, our role here is limited to reviewing the trial court's actions in the context of the dispositional review hearing.

5. Section 6339(a) reads as follows:

(a) **General rule.**—If the allegations of a petition are admitted by a party or notice of hearing under section 6355 (relating to transfer to criminal proceedings) had been given, the court, prior to the hearing on need for treatment or disposition, may direct that a social study and report in writing to the court be made by an officer of the court or other persons designated by the court, concerning the child, his family, his environment, and other matters relevant to disposition of the case. If the allegations of the petition are not admitted and notice of a hearing under section 6355 has not been given, the court shall not direct the making of the study and report until after the court has held a hearing on the petition upon notice of hearing given pursuant to this chapter and the court has found that the child committed a delinquent act or is a dependent child.

with reference to entire statute and not alone).

■ The appellate courts of this Commonwealth have found that a trial court, acting pursuant to the Juvenile Act, has broad powers of discretion "guided by the overriding principle of acting to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions [of the Juvenile Act]." *In re Frederick F.*, 400 Pa.Super. 542, 552, 583 A.2d 1248, 1253 (1990) (citing *In re Lowry*, 506 Pa. 121, 129–30, 484 A.2d 383, 388 (1984)); 42 Pa.C.S.A. § 6301(b). In rendering the disposition "best suited to the protection and physical, mental, and moral welfare of the child," our courts have emphasized that both the hearing and reviewing courts should take into consideration any and all factors that bear upon the welfare of the child and can aid the court's inevitably imprecise prediction about the child's future well-being. *See In re Davis*, 502 Pa. 110, 122, 465 A.2d 614, 620 (1983) (Larsen, Justice, with one Justice agreeing and four Justices concurring in result); *In Interest of S.M.S.*, 284 Pa.Super. 9, 16–17, 424 A.2d 1365 (1981) (proper disposition requires comprehensive inquiry by hearing judge). "[T]he court should adduce the source of difficulties with appellant and whether [appellant's] inability to maintain a secure home for her child is due to a lack of cooperation or a lack of understanding as to her duty to her son." *In re Frank W.D.*, 315 Pa.Super. 510, 519, 462 A.2d 708, 712 (1983) (citing *In re Interest of Black*, 273 Pa.Super. 536, 548, 417 A.2d 1178, 1184 (1980)). Further, this court has observed that,

> [o]ne cannot pretend that it will be easy to determine how much vitality the family retains. It may be done, however, if the hearing judge will always bear in mind the reason our law requires him to try to preserve the family. It is not to preserve a mere social form, or a convention from the past, but to provide our children a place of shelter and love, so that they may grow in freedom and strength. The measure of a family's vitality is its ability to perform this function.
>
> Some of the questions a hearing judge should ask have already been suggested. Stated more generally, his inquiry should be to determine the source of the difficulties of the family whose child is before him. *Do the family's difficulties come from within? Do the parents understand their "high duty" to their children? Can they be helped to understand?* If they understand, do they have the personal resources to act upon their understanding? Or do the family's difficulties come from without? Has the family been overwhelmed by sickness? By economic problems? What are the chances of helping the family overcome such difficulties?
>
> By adopting such an approach, the hearing judge may reasonably expect some degree of success in his difficult task. In one case, the judge may find that the natural family retains enough vitality to require the attempt to preserve it, in another, that as the child's personal history has evolved, it neither has nor can expect to have a natural family able to afford it the security and love it needs.

*In the Interest of LaRue*, 244 Pa.Super. 218, 231, 366 A.2d 1271, 1277–78, (1976) (Spaeth, J., with one judge concurring) (emphasis provided).

Appellant argues that the legislature neither explicitly empowered the court with the authority to compel appellant to submit to a psychological evaluation nor implicitly empowered the court with such authority. Specifically, appellant asserts that the legislature would not have enacted 42 Pa.C.S.A. § 6339(b),[6] if the authority were within the court's inherent rights and powers. We disagree.

---

6. 42 Pa.C.S.A. § 6339(b) reads as follows:

**(b) Physical and mental examinations and treatment.**—During the pendency of any proceeding the court may order the child to be examined at a suitable place by a physician or psychologist and may also order medical or surgical treatment of a child who is suffering from a serious physical condition or illness which in the opinion of a licensed physician requires prompt treatment, even if the parent, guardian, or other custodian has not been given notice of a hearing, is not available, or without good cause informs the court of his refusal to consent to the treatment.

Appellant's argument ignores the principle of construction that Section 6339 must be viewed in the context of the Juvenile Act as a whole. In particular, two of the clearly expressed purposes of the act—to provide for the care, protection, and wholesome mental and physical development of children and to preserve the family unit where possible—must be considered when interpreting each provision of the Act. The trial court directly states that it "is concerned with the proper placement of the child and with the possibility of keeping families together." (N.T. 9/29/94 at 3). In order for the trial court to enter a correct and proper disposition that is best suited to the protection and physical, mental, and moral welfare of the child, the trial court must have the appropriate information before it, specifically, information that will help determine if appellant is able to care for and protect T.R.

■ Instantly, the trial court's ordering of a psychological evaluation for appellant was the most efficacious way to determine whether she understands her "high duty" to her child; alternative means, namely the parenting classes that appellant was asked to attend but failed to attend and the disciplinary techniques that appellant used inappropriately, were neither informative nor effective.

Moreover, the trial court properly exercised its broad discretionary powers under Section 6351 to further the purposes of the Juvenile Act as set forth in Section 6301. Because the Legislature and our courts have demanded that a searching inquiry be undertaken when determining the disposition of a dependent child, the trial court's order directing a psychological examination of appellant is entirely consistent with the avowed purposes of the Juvenile Act. Thus, read in the context of the entire Juvenile Act and not erroneously considering Section 6339 in a vacuum, we hold that the Juvenile Act implicitly authorized the trial court to exercise its broad discretion and order the psychological examination of appellant.

Next, we must determine whether the trial court's order compelling appellant to submit to a psychological evaluation violates appellant's constitutional right to privacy under Art. 1, § 1 of the Pennsylvania Constitution. In order to resolve this issue we must first determine the level of scrutiny with which we review this order.

■ The right to privacy is a well-settled part of this Commonwealth's jurisprudential tradition. *Stenger v. Lehigh Valley Hosp. Center,* 530 Pa. 426, 434, 609 A.2d 796, 800 (1992). Therefore, we avoid unjustified intrusions into the lives of our citizens. *Id.* In particular, protection of one's reputation, a fundamental right that falls under the right to privacy, is provided for in Article 1, § 1 of the Pennsylvania Constitution. *See Hatchard v. Westinghouse Broadcasting,* 516 Pa. 184, 193, 532 A.2d 346, 350 (1987); *Moyer v. Phillips,* 462 Pa. 395, 400, 341 A.2d 441, 443 (1975). Nevertheless, the right to privacy, including the protection of one's reputation, is not absolute and must be balanced against weighty competing private and state interests.[7] *Stenger v. Lehigh Valley Hosp. Center, supra* (citing *Fabio v. Civil Service Commission of City of Philadelphia,* 489 Pa. 309, 323, 414 A.2d 82, 89 (1980)).

There is no longer any question that the United States Constitution provides protection for an individual's right of privacy. *See Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Fraternal Order of Police, Lodge 5 v. Philadelphia,* 812 F.2d 105 (3d Cir.1987); *United States v. Westinghouse Electric Corp.,* 638 F.2d 570 (3d Cir.1980). At least two distinct types of privacy interests have been recognized. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important deci-

7. "It is acknowledged that court orders which compel, restrict or prohibit discovery constitute state action which is subject to constitutional limitations." *Stenger v. Lehigh Valley Hosp. Cen-*

*ter,* 530 Pa. 426, 435 n. 8, 609 A.2d 796, 801 n. 8 (1992) (citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)).

sions." *Whalen*, 429 U.S. at 599–600, 97 S.Ct. at 876–877 (footnote omitted). This Court has recognized these same interests under the Pennsylvania Constitution. *See In re June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 415 A.2d 73 (1980); *In re "B"*, 482 Pa. 471, 394 A.2d 419 (1979).

*Id.* at 434, 609 A.2d at 800.

■ Under the constitutional law of this Commonwealth, only a compelling state interest will force one's privacy rights to give way. *Id.* at 437, 609 A.2d at 802. Whether or not a state's "compelling governmental interest" justifies a given privacy intrusion depends in part upon whether that intrusion will effectuate its purpose. "[F]or if the intrusion does not effect the state's purpose, it is a gratuitous intrusion, not a purposeful one." *Id.* (quoting *Denoncourt v. Commonwealth, State Ethics Commission*, 504 Pa. 191, 200, 470 A.2d 945, 949 (1983) (plurality)).

Appellant argues that she has a right to be free in her thoughts from government intrusion, that she has a right not to have her thoughts made public by the government, and that she has a right to be free in thought from government compulsion. Therefore, appellant concludes that compelling her to submit involuntarily to a psychological evaluation to reveal her "innermost thoughts" violates all of these privacy rights and may impugn her reputation.

We agree that appellant possesses a reasonable expectation of privacy in her "innermost thoughts," which should be protected from unreasonable government intrusion. *See e.g. Denoncourt v. Commonwealth, State Ethics Commission, supra* at 197–98, 470 A.2d at 948 (plurality) (freedom from disclosure of personal matters is recognized privacy interest under Pennsylvania Constitution). However, the circumstances and the context in which the trial court compelled appellant to submit to a psychological evaluation must be considered when determining whether appellant's right to privacy was violated. The context is that of a dispositional review hearing where the court, being guided by the best interests of T.R., must determine whether T.R. is able to safely remain with his mother, subject to such conditions and limitations as

the court prescribes, or whether he should remain committed to DHS.

■ Keeping this context in mind, we will apply the compelling interest standard to appellant's privacy argument to determine whether an intrusion into appellant's privacy is justified. The compelling interest of the government as set forth in the Juvenile Act and reiterated by the trial court is T.R.'s future well-being and the possible reunification of his family. Additionally, the trial court does not want to separate T.R. from his mother unless it is "necessary for his welfare or in the interest of public safety." 42 Pa. C.S.A. § 6301(b)(3). In order for the trial court to render the disposition best suited to the protection and physical, mental, and moral welfare of T.R., the trial court must consider any and all factors which bear upon T.R.'s welfare and can aid the court's inevitably imprecise prediction about T.R.'s future well-being.

Absent the psychological evaluation, the only information about appellant's ability to care for T.R. that the trial court would have before it would be the testimony of Mr. Hairston and Ms. Johnson. According to Mr. Hairston, appellant failed to protect T.R. and, thus, provide for his safety when she allowed T.R. to suffer many bodily injuries, including fractured ribs, at the hands of his two older brothers. According to Ms. Johnson, appellant failed to cooperate with respect to the parenting classes that she was supposed to attend but did not attend, and she failed to comply with the proper way of using the time-out disciplinary technique. Hence, the evaluation was needed for the trial court to conduct a thorough review of those factors affecting T.R.'s welfare, and to order a proper disposition. *See e.g. In Interest of S.M.S.*, 284 Pa.Super. 9, 16–17, 424 A.2d 1365, 1369 (1981) (to ensure proper disposition hearing judge should conduct comprehensive inquiry by receiving evidence from both interested and disinterested parties).

Furthermore, the psychological evaluation was the least restrictive means to obtain information about appellant's caretaking ability because the other methods of obtaining

such information were either limited or failed to provide the necessary information. Additionally, Dr. Barenbaum's written report pursuant to the psychological evaluation was delivered directly to the trial court in a sealed envelope; therefore, appellant's reputation is not in jeopardy in this context. Thus, we conclude that the trial court's order compelling appellant to submit to a psychological evaluation does not violate appellant's constitutional right to privacy under Article 1, § 1 of the Pennsylvania Constitution.

▬ The final issue we must address is whether the trial court erred in ruling that, at a dispositional review hearing under the Juvenile Act, the court has the authority to release the testing, evaluation, and psychological report of appellant to the interested parties or whether this release violates appellant's constitutional right to privacy under Article 1, § 1 of the Pennsylvania Constitution. In order to resolve this issue, we will apply the same level of scrutiny we used to determine whether the trial court's order compelling appellant to submit to a psychological evaluation was constitutional.

Appellant asserts that no state interest has been given to justify the intrusion of privacy into appellant's mental state of health, and, thus, this intrusion does not effect the state's purpose. Additionally, appellant argues that the harm caused her reputation by non-consensual disclosure of innermost embarrassing thoughts could destroy, not protect, her constitutionally protected reputation. Finally, appellant contends that the trial court failed to consider whether there was an alternative reasonable method of lesser intrusion than the release of appellant's evaluation to the parties.

The two compelling state interests that justify disclosure of appellant's mental state of health are to provide for the protection of T.R. and to increase the likelihood of familial reunification. *See* 42 Pa.C.S.A. § 6301(b)(1). Both of these state interests must be weighed against appellant's constitutional right to privacy in her reputation. However, appellant's constitutional right to privacy in her reputation is not being impinged upon because the information was placed under seal and is restricted to interested parties. *See* 42 Pa.C.S.A. § 6307.[8] Because disclosure of the report is restricted by the Juvenile Act to the court, parties, and legitimately interested parties, the scales of justice tip in favor of the state's compelling interest.

Finally, there was no alternative reasonable method of lesser intrusion than the release of appellant's evaluation to the parties because the information obtained from the parenting and disciplinary strategy sessions was inadequate. The observations from these sessions or failure to attend these sessions would not be of any assistance in determining whether appellant understood her parental duty; hence, they would not aid the agency in developing a family service plan to accomplish the primary goal of reunification.

Accordingly, we hold that the trial court possesses the authority in this matter to compel appellant to submit to a psychological evaluation and to permit the release of a report prepared pursuant to the psychological evaluation to the interested parties. The trial court properly used its broad discretionary powers implicitly provided for under 42 Pa.C.S.A. § 6351 to further the purposes of

---

8. Section 6307 provides as follows:

All files and records of the court in a proceeding under this chapter are open to inspection only by:

(1) the judges, offers and professional staff of the court.

(2) The parties to the proceeding and their counsel and representatives, but the persons in this category shall not be permitted to see reports revealing the names of confidential sources of information contained in social reports, except at the discretion of the court.

(3) A public or private agency or institution providing supervision or having custody of the child under order of the court.

(4) A court and its probation and other officials or professional staff and the attorney for the defendant for use in preparing a presentence report in a criminal case in which the defendant is convicted and who prior thereto had been a party to a proceeding under this chapter.

(5) The Administrative Office of Pennsylvania Courts.

(6) With leave of court, any other person or agency institution having a legitimate interest in the proceedings or in the work of the unified judicial system.

the Juvenile Act as set forth in 42 Pa.C.S.A. § 6301. We further hold that the trial court's order compelling appellant to submit to a psychological evaluation did not violate appellant's constitutional right to privacy under Article 1, § 1 of the Pennsylvania Constitution because the state's compelling interest of protecting T.R.'s future well-being and familial reunification outweighed appellant's privacy intrusion. Finally, we hold that the trial court may properly disclose the results of the psychological evaluation to the interested parties without violating appellant's constitutional right to privacy under Article 1, § 1 of the Pennsylvania Constitution because the information is necessary for the interested parties to carry out the purposes of the act and no alternative reasonable method of lesser intrusion exists to permit the interested parties to do so. Therefore, we affirm the order of the trial court.

Order affirmed. Jurisdiction relinquished.