J-S10031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.M., MOTHER | : | No. 1047 WDA 2023 |

Appeal from the Order Entered August 10, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-DP-0000921-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: T.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.M., MOTHER | : | No. 1048 WDA 2023 |

Appeal from the Order Entered August 10, 2023
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s): CP-02-DP-0000920-2021

BEFORE:    OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: MAY 20, 2024**

G.M. ("Mother") appeals from the permanency review orders concerning her children, T.M., born in January 2019, and K.M., born in August 2020 (collectively, "Children").[1] We determine the portion of the trial court's order denying Mother's request for immediate return of the Children or overnight visits is interlocutory, and thus we quash her appeal therefrom. We further determine that the portion of the order directing Mother to undergo a mental

---

[1] Although the trial court entered separate dependency orders for each child, for ease of discussion we refer to the court's rulings in the singular.

health evaluation is collateral and appealable, but we conclude she has waived any challenge thereto. We thus quash in part and affirm in part.

The Allegheny County Children, Youth and Families ("CYF") agency was previously involved with this family due to concerns of domestic violence between Mother and the Children's father, J.M. ("Father"). In 2020, Mother pleaded guilty to endangering the welfare of children "for an incident in which [T.M.] was injured when [M]other attacked [F]ather." Shelter Care Application for T.M., 1/5/23, at 3. According to the trial court, in March 2022 Father obtained a protection from abuse ("PFA") order against Mother, which prohibited her from having violent contact with the Children.[2] In January 2023, the Children were removed from Father's care due to concerns of physical abuse. At this time, Mother reported she had not seen the Children since 2022. She "testified" she was "diagnosed with borderline MR, depression, [and] bipolar disorder," was in mental health treatment through TRAC, and was prescribed medication by her primary care physician. Shelter Care Order, 1/6/23, at 2.[3]

The trial court adjudicated the Children dependent on February 1, 2023, when T.M. was almost four years old and K.M. was two years old. The

_____

[2] As of the trial court's January 6, 2023 shelter care order, the PFA remained active.

[3] Although the text of the shelter care order states that it was entered January 6, 2023, it was not filed on the trial docket until January 9, 2023. For ease of review, we refer to this order as dated January 6, 2023.

permanency goal was reunification. The court directed Mother to, *inter alia*, continue with mental health treatment and to have an updated mental health evaluation.

Six months later, on August 9, 2023, the trial court conducted the underlying permanency review hearing. Mother, Father, CYF Caseworker Todd Loughman, and Mother's therapist of several years, Jami Lyn Duane-Brady, testified. The Children were currently placed with a paternal aunt, with whom Mother stated she had a good relationship. Caseworker Loughman testified the Children were doing well, and additionally, CYF did not have any concerns with regards to an older child, eight years old, who lived with Mother. It was not disputed that Mother was complying with her goals; she completed parenting and domestic violence programs, "made a lot of progress" with mental health treatment, and was compliant with her medication. N.T. Permanency Review Hearing, 8/9/23, at 7. With respect to Mother's goal of completing an updated mental health evaluation, the caseworker testified that in May 2023, Mother had an intake evaluation with Pressley Ridge, who then commenced "a document-finding phase," which could last twelve to fifteen weeks. *Id*. at 7-8. Finally, Mother had "unsupervised liberal visits" with the Children, "five or six days a week, pretty much all day. There [have] been no concerns thus far." *Id*. at 9.

Caseworker Loughman recommended that Mother continue with her mental health evaluation and be granted overnight weekend visits. Mother

requested that the Children be returned to her immediately or, in the alternative, that the trial court grant overnight weekend visits. At the conclusion of the hearing, the trial court entered a permanency review order in which it denied Mother's request for return of the Children to her care, as well as overnight visits, and directed her to continue with mental health treatment and an updated evaluation.

Mother filed a motion for reconsideration, which the trial court denied. Mother then filed timely notices of appeal, along with Pa.R.A.P. 1925(a)(2) concise statements of errors complained of on appeal. On appeal, this Court initially issued a *per curiam* rule on Mother to show cause why the underlying permanency order is appealable as a final or collateral order. Mother responded, and this Court discharged the rule but advised the parties that the merits panel may revisit this issue of jurisdiction.

Mother presents four issues for our review:[4]

I. Is the August 9, 2023 permanency review order an appealable order?

II. Did the trial court abuse its discretion and/or err as a matter of law by finding that there was a pre-existing order of court regarding custody of K.M. and T.M. when the record did not support the existence of such an order?

III. Did the trial court abuse its discretion and/or err as a matter of law by denying Mother's request for reunification and/or overnight visitation based on its erroneous belief that any pre-existing custody order limits the trial court's discretion to make decisions about physical and legal custody of dependent children?

---

[4] We have reordered Mother's issues for ease of review.

- 4 -

IV.  Did the trial court abuse its discretion and/or err as a matter of law by ordering that Mother undergo a psychological evaluation when the record did not support any concern for Mother's present mental health functioning or any safety concerns for K.M. and T.M.?

Mother's Brief at 7 (unnecessary capitalization omitted).[5]

In Mother's first issue, she argues both portions of the trial court's order — (1) denying her request for immediate return of the Children or overnight visits; and (2) directing her to undergo an updated mental health evaluation — are appealable.[6]  We address each ruling separately.

First, Mother avers that the trial court's denial of her request, for the return of the Children to her care or, in the alternative, overnight weekend visits, is final and appealable.  The appealability of an order implicates our jurisdiction.  ***See Interest of J.M.***, 219 A.3d 645, 650 (Pa. Super. 2019) ("***J.M.***").  "Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary."  ***Id***. (citation omitted).

---

[5] Relevant to Mother's arguments on appeal, we note that she testified there was a pre-existing custody order, still in effect, which had granted Father primary custody.  ***See*** N.T., 8/9/23, at 32-33.  Caseworker Loughman testified he believed, but was not certain, that there was a custody order at the time of the referral.  ***See id***. at 14.  In announcing its decision, the trial court referred to the possible existence of a custody order.  In Mother's motion for reconsideration, she argued, for the first time, that there was in fact no final custody order, and on appeal, she focuses much of her argument on the trial court's alleged error in relying on an apparent custody order.  In light of our disposition, we do not reach the merits of these arguments.

[6] The trial court did not address the issue of appellate jurisdiction.

"In order to be appealable, the order must be: (1) a final order, Pa.R.A.P. 341-42; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S.[A.] § 702(a)-(b); Pa.R.A.P. 311-12; or (3) a collateral order, Pa.R.A.P. 313." *Id*. (footnote omitted).

> This Court has explained:

> Generally, a final order is any order that disposes of all claims and all parties. Pa.R.A.P. 341(b). Based upon the two-step procedure contemplated by the Juvenile Act for declaring a child dependent (*i.e.*, an adjudication followed by a disposition, *see* 42 Pa.C.S.[A.] § 6341(c)), this Court has held that it is the dispositional order following a dependency adjudication that is a final appealable order.

*Id*. at 650-51.

In *In re H.S.W.C.-B.*, 836 A.2d 908 (Pa. 2003) ("*H.S.W.C.-B.*"), a child welfare agency appealed from an order denying their petitions to change a family goal from reunification to adoption, and to involuntarily terminate the mother's parental rights. *See id*. at 909. This Court "quashed the appeal, holding that because the order merely maintained the *status quo*, it was not a final order and therefore not appealable." *Id*. On appeal, the Pennsylvania Supreme Court reversed, holding that the appeal was properly taken, and adopting a rule that "an order granting or denying a status change, as well as an order terminating or preserving parental rights, shall be deemed final when entered." *Id*. at 911. We note that in reaching this conclusion, the Court also stated, "All orders dealing with custody or *visitation*, with the exception of enforcement or contempt proceedings, are final when entered." *Id*.

(emphasis added), *citing* Pa.R.C.P. 1915.10 (addressing trial court's order in a ***custody*** matter).

In ***J.M.***, a dependency matter, this Court considered the above statements in ***H.S.W.C.-B***. The permanency goal was reunification, and the mother had visitation time with her three teenage children. ***See J.M.***, 219 A.3d at 649. The mother filed petitions for return of the children to her care, and for "a home pass during [the c]hildren's holiday break." ***Id***. At a hearing, the trial court reasoned it would permit a home pass only if the mother and all three children tested negative in drug screens; the court, however, then learned the mother and two children had indeed tested positive. ***See id***. The court thus entered orders prohibiting visits to be held in the mother's home if she or the children tested positive for drug use. ***See id***. at 649-50. The mother's visitation rights were not otherwise disturbed, and the trial court informed the parties that the issue of "home visit[s] can be revisited." ***Id***. at 649.

The mother appealed to this Court, which first considered whether the trial court's orders were appealable. ***See J.M.***, 219 A.3d at 650. This Court considered:

> Unlike other types of cases, dependency matters do not end following a child's disposition. The juvenile court is statutorily required to review the case periodically and issue orders relating to a variety of issues. 42 Pa.C.S.[A.] § 6351(e)(3), (f)-(g). The purpose of the periodic review hearings is to "determin[e] or review[] the permanency plan of the child, the date by which the goal of permanency for the child might be achieved[,] and whether placement continues to be best suited to the safety,

protection and physical, mental and moral welfare of the child."
42 Pa.C.S.[A.] § 6351(e)(1).

*Id*. at 651 (footnotes and some citations omitted).

The ***J.M.*** Court then reviewed the statement in ***H.S.W.C.-B.***, that "[a]ll orders dealing with custody or ***visitation***, with the exception of enforcement or contempt proceedings, are final when entered." *Id*. at 911 (emphasis added). The ***J.M.*** Court held this reference to "visitation" did not apply to a parent's visitation rights within a ***dependency*** matter under the Juvenile Act, but rather only to visitation in a ***custody*** matter under the Child Custody Act.[7] *Id*. at 653-54. Having resolved ***H.S.W.C.-B.***'s reference to an order affecting visitation, the Court concluded the trial court's orders were not final:

> The orders at issue . . . continu[e] a permanency review hearing and plac[e] location restrictions on [the m]other's visits with [her c]hildren until all were drug-free. This is not a "status change" within the meaning of ***H.S.W.C.-B***. It also does not dispose of all parties or issues in the dependency matter. Considering that the [trial] court expressly informed the parties that it would revisit the issue of home passes and the permanency review hearing was continued for one month, the practical consequences of the orders do not put [the m]other out of court in effect. Therefore, we conclude that the orders appealed from are not final orders for purposes of Pa.R.A.P. 341.

*Id*. at 654-55 (citations omitted).

Mother asserts that the trial court's denial, of immediate return of the Children or overnight weekend visits, is final and appealable. She

---

[7] ***See*** 23 Pa.C.S.A. §§ 5321-5340 (Child Custody Act); 42 Pa.C.S.A. §§ 6301-6375 (Juvenile Act).

acknowledges the trial court's ruling is "a refusal to change the *status quo*," but maintains that it directly affects her parental rights. Mother's Brief at 40. Mother relies on the statement in *H.S.W.C.-B.*, "that orders in dependency proceedings affecting parental rights are deemed final and appealable when entered." *Id*. Mother further cites *H.S.W.C.-B.*'s policy concern that *not* reviewing such orders could "permanently shield[]" the order from independent review and "prevent meaningful consideration of" reunification. *Id*. at 40-41. Mother reasons that "[s]uch a result is an injustice [that] a later appeal would not correct, as every day that [the Children] remain[] in foster care will have an impact on" their wellbeing. *Id*. at 41. Finally, Mother urges this Court to find this matter analogous to *H.S.W.C.-B.*, because here, "the trial court effectively took the goal of reunification . . . off the table." *Id*. at 43 n.3.

We determine that *J.M.* applies to this appeal. We note that Mother's particular visitation request — for overnight weekend visits — differs from that in *J.M.* — for visits in the mother's home. Nevertheless, this particular difference does not undermine the applicability of the discussion in *J.M.* Here, the trial court's ruling did not dispose of all the parties or issues. *See J.M.*, 219 A.3d at 650-51; *see also* Pa.R.A.P. 341(b). Furthermore, it was not disputed that Mother had "unsupervised liberal visits" with the Children, aged two and four years old, "five or six days a week, pretty much all day," and that Mother had a good relationship with paternal aunt, with whom the

Children are placed. N.T., 8/9/23, at 9, 30. The trial court's order did not effect any "status change" and did not, as Mother contends, "effectively [take] the goal of reunification . . . off the table." Mother's Brief at 43 n.3. The goal remains reunification. Indeed, the trial court will continue to conduct permanency review hearings. Accordingly, we conclude that under the particular circumstances presented, the portion of the court's ruling, denying Mother's requests for immediate return of the Children or overnight visits, is not a final order. *See J.M.*, 219 A.3d at 654-55.

As noted above, an appeal may also be taken from an interlocutory order appealable by right or permission or a collateral order. *See J.M.*, 219 A.3d at 650. Although Mother did not present any discussion thereof, we *sua sponte* consider whether the trial court's ruling meets either classification. *See id*. (noting that "[since we] lack jurisdiction over an unappealable order, it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order").

Mother has not sought permission to appeal from the underlying ruling as an interlocutory order, and we have not discovered any authority providing that the ruling would constitute an interlocutory order appealable as of right. *See* 42 Pa.C.S.A. § 702(a)-(b). Thus, the order is not an appealable interlocutory order.

With respect to an appealable collateral order, this Court has explained:

> The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise

- 10 -

interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *See* Pa.R.A.P. 313.

Our Supreme Court has directed that Rule 313 be interpreted narrowly so as not to swallow the general rule that only final orders are appealable as of right. To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied.

***J.M.***, 219 A.3d at 655 (some citations omitted).

The ***J.M.*** Court considered whether the trial court's order — requiring negative drug tests from the mother and all three children before visits could be held at the mother's home — was an appealable collateral order under Rule 313. ***See id***. at 656. The Court found the second prong of the test was not established:

> There is no question that a parent's "constitutionally protected liberty interest" in visiting her dependent children is an important right; this is reflected by the requirement that when the permanency goal remains reunification, visitation should not be denied or reduced unless it poses a "grave threat" to the children.
>
> But the same cannot be said of a parent's right to visit with her dependent children in her home regardless of the parent's and/or children's sobriety. Because [the c]hildren have been adjudicated dependent and [the m]other does not have custody of them, [she] does not possess an unfettered right to visit with Children under any conditions. Moreover, there is no indication in the record that [the m]other was denied the right to see [the c]hildren in any fashion, or was denied the right to visit with [the c]hildren in her home environment indefinitely. Accordingly, at this juncture, we conclude the right involved is not too important to be denied review.

*Id*. at 660-61 (citations omitted and paragraph break added).

Additionally, the *J.M.* Court found the third prong of the collateral order test — an irreparable loss — was not met. *See J.M.*, 219 A.3d at 661. The Court acknowledged that "the four days over the New Year's holiday at issue cannot be recovered," but nevertheless reasoned that the mother's "right to home visits in general have not been irreparably lost," as the trial court had expressly advised the parties that "it would revisit the issue." *Id*. Accordingly, the *J.M.* Court concluded that the trial court's order was not an appealable collateral order.[8] *See id*.

Again, we conclude this discussion in *J.M.* is applicable to the instant appeal. It is clear that Mother has an important, constitutionally protected liberty interest in visiting her Children. *See J.M.*, 219 A.3d at 660. Nevertheless, as the Children have been adjudicated dependent and Mother does not have physical custody, she did not possess an unfettered right to visit with the Children without any conditions. We must consider the context of the trial court's decision: Mother had "unsupervised liberal visits" with the Children, "five or six days a week, pretty much all day." N.T., 8/9/23, at 9. Under the particular facts of this case, we conclude that the denial of *additional* visits does not involve a right too important to be denied review.

---

[8] The *J.M.* Court concluded that because the collateral order test could be resolved on the basis of the second two prongs, it needed not review the first prong. *See J.M*., 219 A.3d at 660.

- 12 -

***See J.M***., 219 A.3d at 661; ***see also*** Pa.R.A.P. 313(b).  Furthermore, Mother's right to overnight weekend visits has not been irreparably lost, as the trial court will continue to conduct permanency review hearings and evaluate the Children's safety, protection, and physical, mental, and moral welfare, and the appropriateness and scope of Mother's visits.  ***See J.M***., 219 A.3d at 651; ***see also*** 42 Pa.C.S.A. § 6351(e)(1).  In sum, the second two prongs of the collateral order test have not been met.[9]

As we conclude that the trial court's denial of Mother's request, for return for the Children to her care or for overnight weekend visits, is not a final order, an appealable interlocutory order by permission or as of right, nor an appealable collateral order, we quash her appeal therefrom.  ***See J.M.***, 219 A.3d at 650-51.  At this juncture, we note that Mother's second and third issues on appeal challenge the trial court's reasoning for this ruling.  Because we quash the appeal therefrom, we do not reach their merits.

In the second part of Mother's first issue, she avers that the trial court's requirement of an updated mental health evaluation is an appealable collateral order.  The decision in ***In re T.R.***, 665 A.2d 1260, 1261 (Pa. Super. 1995) ("***T.R. I***"), *affirmed on other grounds*, 731 A.2d 1276 (Pa. 1999) (opinion announcing judgment of the Court) ("OAJC") ("***T.R. II***"), is instructive.  In

---

[9] Accordingly, we need not review the first prong of the test — whether the trial court's denial of overnight weekend visits is separable from and collateral to the main cause of action.

that dependency matter, the trial court directed a mother to undergo psychological evaluation and to disclose the results to interested parties. ***See T.R. I***, 665 A.2d at 1261. The Superior Court first held the order was an appealable collateral order, as: (1) the order was separable and collateral to the main cause of action; (2) the mother's right to privacy was too important to be denied review; and (3) if review were postponed, the mother would lose the opportunity to prevent disclosure of her personal information. ***See id***. at 1263. However, on the merits, the Superior Court held that a trial court's order did not violate the mother's constitutional right to privacy.[10] ***See id***. at 1268.

The mother appealed to the Pennsylvania Supreme Court, which issued a divided decision. While the Justices disagreed on the issue of privacy, there was no discussion — and thus no disturbance — of the Superior Court's conclusion that a collateral appeal may be taken from a juvenile dependency order directing a parent to undergo psychological evaluation. Furthermore, "a plurality opinion is not binding precedent" on future cases. ***MacPherson v. Magee Mem'l Hosp. for Convalescence***, 128 A.3d 1209, 1223 (Pa. Super. 2015) (*en banc*). Accordingly, the Superior Court's ***T.R. I*** decision governs this appeal, and we hold the trial court's order, directing Mother to

---

[10] In light of our disposition on this issue, we need not review in detail the Superior Court's analysis.

undergo an updated mental health evaluation, is appealable as a collateral order.

In Mother's final issue, she challenges the merits of the trial court's requirement that she undergo an updated mental health evaluation. Mother contends "the record did not support any concern for [her] present mental health functioning or any safety concerns for" the Children. Mother's Brief at 35. To the extent the trial court cited Mother's prior stipulation to "having mental health . . . and domestic violence issues," Mother maintains that any admission by her in February 2023 would not "establish a compelling state interest in requiring her to undergo a mental health evaluation six . . . months later." *Id*. at 37. Mother also cites her therapist's testimony that "her mental health has been stable for quite some time." *Id*. at 38.

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "The law is clear that 'issues, even those of constitutional dimension, are waived if not raised in the trial court. A new and different theory of relief may not be successfully advanced for the first time on appeal.'" *Commonwealth v. Cline*, 177 A.3d 922, 927 (Pa. Super. 2017).

At the underlying permanency review hearing, Mother freely testified about her mental health treatment, and importantly, she did not raise any objection when the trial court ordered her to continue with an updated mental health evaluation. Instead, Mother raised the instant issue for the first time

on appeal. We conclude that she has waived this issue for failure to preserve it before the trial court. ***See*** Pa.R.A.P. 302(a); ***see also Cardona v. Buchanan***, 230 A.3d 476, 478 (Pa. Super. 2020) (stating that this Court may affirm on any ground).

In sum, we conclude the trial court's denial of Mother's request for immediate return of the Children or overnight weekend visits is not an appealable final order, interlocutory order, or collateral order. We thus quash Mother's appeal therefrom. We determine Mother may appeal from the trial court's requirement of her to undergo an updated mental health evaluation, but affirm on the ground Mother has waived her challenge thereto.

Order quashed in part and affirmed in part.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/20/2024