609 A.2d 796

William R. STENGER, Donna A. Stenger, Craig
Stenger and Barry Stenger, Appellees,

v.

LEHIGH VALLEY HOSPITAL CENTER, Samuel Huston,
Theodore J. Matulewicz, M.D., Barry H. Slaven, M.D., Hospi-
tal Central Services, Inc., H.C.S.C.—Blood Center trading as
Samuel W. Miller Memorial Blood Center, Lyndal Molthan,
M.D., and Joseph Yelo.

Appeal of H.C.S.C.—BLOOD CENTER t/a Samuel W. Miller
Memorial Blood Center, Lyndal Molthan, M.D., Joseph
Yelo and Lehigh Valley Hospital Center, Appellants.

Supreme Court of Pennsylvania.

Argued Dec. 4, 1990.

Decided June 2, 1992.

Edward C. McCardle, Georgine Olexa, Allentown, for Lehigh Valley Hosp. Center.

Arthur J. Murphy, Jr., David L. Haber, Pittsburgh, Robertson B. Taylor, Bethlehem, for H.C.S.C., t/a Samuel M. Miller Memorial Blood Center, Joseph Yelo, Hosp. Central Services Inc., and Lyndal Molthan, M.D.

Pamela Higgins, Philadelphia, for William, Donna, Craig and Barry Stenger.

George J. Murphy, Philadelphia, for Hospital Central Services, Inc.

Richard F. Stevens, Allentown, for Lehigh Valley Hospital Center and Samuel Huston and Theodore J. Matulewicz.

Neil L. Conway, Allentown, for Barry H. Slaven, M.D.

William J. O'Brien, Howard M. Klein, for amicus curiae American Nat. Red Cross, American Ass'n of Blood Banks and Council of Community Blood Centers.

John W. Wiggins, Chief Asst. City Sol., Sp. Counsel to the Health Dept., for amicus curiae City of Phila. Health Dept.

Peter J. Hoffman, Marybeth S. Christiansen, for amicus curiae Pennsylvania Medical Soc.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

Instantly before the Court are companion appeals from an order of the Superior Court which had reversed in part and affirmed in part the order of the Court of Common Pleas. 386 Pa.Super. 574, 563 A.2d 531. The appeal filed at No. 84 E.D. Appeal Docket 1990 was instituted by the Lehigh Valley Hospital Center (herein referred to as "Hospital"). The companion appeal filed at No. 83 E.D. Appeal Docket 1990 was instituted by H.C.S.C.—Blood Center t/a Miller Memorial Blood Center (herein referred to as "Blood Center"). The controversy centers upon the propriety of certain interrogatories propounded by the appellees (plaintiffs below) to the appellants herein (defendants below). For the reasons that follow, we conclude that the discovery ordered by the Superior Court is permissible under both the Pennsylvania Rules of Civil Procedure and the right to privacy guaranteed by our State and Federal Constitutions.

The Stengers, appellees herein, brought the underlying action asserting that the appellants were negligent in the collection and dispensing of blood and blood products and as a result the Stengers sustained serious injury and death. In a pre-trial application the Stengers filed a motion to compel the discovery of information they alleged to be crucial to the prosecution of their claim. The instant appeal focuses upon the information sought in interrogatories No. 28 [1] and No. 8. [2]

---

**1.** Interrogatory number 28 addressed to the Hospital, requested the following information:

> State whether Lehigh Valley Hospital Center has received any other blood and/or blood products from the Miller Memorial Blood Center which was or may have been contaminated with the AIDS virus. If the answer is yes, state:
>     a) the date(s) on which such blood was delivered to Lehigh Valley Hospital Center;

**2.** See note 2 on page 430.

The facts as pleaded by the Stengers are as follows.[3]  In October of 1984, Donna Stenger was severely injured in an automobile accident.  She was taken to the Hospital where she received multiple transfusions of blood and blood products supplied in part by the Blood Center.  In August of 1985, more than eight months after Donna Stenger had been released from the Hospital, the Blood Center learned that a donor who had supplied blood used for Donna Stenger's transfusion tested positive for the Acquired Deficiency Syndrome (AIDS) virus.  However, the Blood Center waited ten months, until May 1986, before informing the Hospital of the possible contamination of Donna Stenger's blood products.  In November 1986, Donna Stenger was suffering from respiratory ailments.  It was upon this visit that the Hospital diagnosed Donna Stenger as suffering from AIDS virus, and notified her that she had received AIDS contaminated blood during her October 1984 treatment.  Within two months Donna's husband, William Stenger, and six-year old son, Craig Stenger, were diagnosed as having been infected with the AIDS virus.  As a result of a "look-back procedure",[4] it was learned that an AIDS infect-

> b) whether such blood and/or blood products were ever administered to any person through transfusion or otherwise;
> c) identify the individual(s) who received the blood and/or blood products identified in subparagraph (b);
> d) identify whether the individual(s) referred to in interrogatory 28(c) has been tested for AIDS;
> e) state with particularity the results of each such test.

2. Interrogatory number 8 addressed to the Blood Center, requested the following:
> Identify the name and last known address of the donor(s) who supplied the blood ultimately used to transfuse Donna Stenger.

3. The material facts of this case upon which the alleged liability is premised have been denied by the appellants.  If this matter reaches the trial stage, the duty to prove those facts will of course be upon the appellees.  At this stage the well-pleaded facts will be assumed to be true.  *See, e.g., Congini by Congini v. Portersville Valve Co.,* 504 Pa. 157, 470 A.2d 515 (1983); *Klein v. Raysinger,* 504 Pa. 141, 470 A.2d 507 (1983); *Gekas v. Shapp,* 3, 469 Pa. 1, 364 A.2d 691 (1976); *Borden v. Baldwin,* 444 Pa. 577, 281 A.2d 892 (1971).

4. "Look-back procedure" was described by the Blood Center as follows:

ed donor gave the infected blood which was transfused into Donna Stenger. On July 3, 1988, Donna Stenger died as a result of complications from the AIDS virus.[5]

The Stengers, plaintiffs below, sought to depose the donor as to the nature of the screening process employed by the Blood Center before extracting the blood used to transfuse Donna Stenger. The purpose advanced was to determine the care taken by the Blood Center in performing its functions of extracting and distributing blood. The Stengers also sought to determine whether the Blood Center had delivered on any other occasion blood or blood products from the same donor to the Hospital Center. If such blood or blood products were in fact received, the Stengers sought the date of receipt of those products. Additionally, they sought whether and when those blood or blood products were transfused to any other patients, and if so, whether those patients have been tested for AIDS and the results of those tests. When the Hospital refused to comply with these requests, the Stengers filed motions to compel discovery and for sanctions.

The Hospital and the Blood Center did not object to the relevance or materiality of the material sought; rather, they contended that the information was not discoverable pursuant to subsections (b) and (c) of Rule 4011 of the Pennsylvania Rules of Civil Procedure.[6] The trial court

Under the "look-back procedure" when a donor tests positive for exposure to the AIDS antibody, it is then determined whether he has made prior donations. If prior donations were made the recipients of the blood products from prior donations are contacted so that they may be tested.
Blood Center's Brief at p. 7.

5. On September 28, 1988, William Stenger, as Administrator for the estate of Donna Stenger, filed in the Court of Common Pleas of Lehigh County a suggestion of death and praecipe for the substitution of the estate as a plaintiff in this case.

6. Rule 4011 sets forth the following limitations:

**RULE 4011. LIMITATION OF SCOPE OF DISCOVERY AND DEPOSITION**

ruled that the Hospital must disclose the dates of delivery of blood from the Blood Center and must disclose the AIDS test results of patients if there are any who also received blood from the same donor. That court denied the Stengers any access to the donor or donors who supplied the blood ultimately used to transfuse Donna Stenger; the trial court also refused to allow disclosure of the identity of other individuals who may have received transfusions from the same donor.

Reviewing the trial court's order, the Superior Court reversed the trial court's order that the Stengers could not discover the Donor's identity, concluding that a limited discovery from the donor whose identity was protected would not constitute an impermissible violation of the donor's right to privacy and also would not violate the physician-patient privilege. Additionally, the Superior Court affirmed the trial court's ruling allowing the Stengers to discover the dates of shipments of the donor's blood and the results of blood tests performed on recipients of the donor's blood. However, the Superior Court sustained the ruling of the trial court refusing to order disclosure of the identities of the other recipients of the blood of the donor.

The issues raised in this case are matters of first impression and extreme importance. They are, whether a plaintiff who is seeking damages for contracting the disease of Acquired Immune Deficiency Syndrome, allegedly as a result of a contaminated blood transfusion received during her hospitalization, may, during the discovery stage, require the defendant to produce the donor or donors for anonymous questioning as to the screening process employed immediately before the extraction and circulation of the blood. Additionally, the plaintiff seeks to obtain access to the anonymous AIDS test results of any other recipients of

No discovery or deposition shall be permitted which
    *     *     *     *     *     *
    (b) would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party;
    (c) [or] relates to matter which is privileged....
Pa.R.C.P. 4011.

the donor's blood or blood products. For the reasons that follow, we conclude that the plaintiff is entitled to the protective discovery as fashioned by the Superior Court.

The parameters of discovery are delineated by Rule 4003.1 of the Pennsylvania Rules of Civil Procedure which provides in pertinent part that "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Pa.R.C.P. 4003.1(a).[7] We begin our assessment of the issues herein by noting that the relevance of the information sought by plaintiffs is beyond question and not disputed by the parties.

Appellant, Blood Center, argues that the limited discovery ordered by the Superior Court is not permissible under Rule 4011(b) of the Pennsylvania Rules of Civil Procedure, which limits the permissible scope of discovery, and is violative of the donor's right to privacy under both the Pennsylvania and the United States Constitutions.

Appellant Hospital argues that the discovery order in question would violate the recipients' constitutional right of privacy and, additionally, alleges that the information sought is privileged and protected pursuant to the physician-patient privilege, 42 Pa.C.S. § 5929 ("Physicians not to disclose information").

We first address the argument raised by both appellants, that the discovery at issue will violate the priva-

---

7. **Rule 4003.1. Scope of Discovery Generally**

(a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

(b) It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Adopted Nov. 20, 1978, effective Jan. 1, 1990.

cy rights of the donor and the other recipients of blood from that source. As the right of privacy is a well-settled part of the jurisprudential tradition in this Commonwealth, we are mindful, as ever, to avoid unjustified intrusions into the private zone of our citizens' lives. We must bear in mind, however, that the right is not an unqualified one; it must be balanced against weighty competing private and state interests. *Fabio v. Civil Service Commission of City of Philadelphia*, 489 Pa. 309, 414 A.2d 82 (1980).

There is no longer any question that the United States Constitution provides protection for an individual's right of privacy. *See Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Fraternal Order of Police, Lodge 5 v. Philadelphia*, 812 F.2d 105 (3d Cir.1987); *United States v. Westinghouse Electric Corp.*, 638 F.2d 570 (3d Cir.1980). At least two distinct types of privacy interests have been recognized. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen*, 429 U.S. at 599–600, 97 S.Ct. at 876–877 (footnote omitted). This Court has recognized these same interests under the Pennsylvania Constitution. *See In re June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 415 A.2d 73 (1980); *In re "B"*, 482 Pa. 471, 394 A.2d 419 (1979).

The right at issue herein concerns avoiding disclosure of personal matters. The object of such a right is, in part, to protect an individual from revealing matters which could impugn his character and subject him to ridicule or persecution. While we respect this right, we are persuaded that this privacy interest is not offended by the anonymous nature of the disclosure permitted by the Superior Court. With no name associated with the disclosure, no disrepute can occur. The evil unleashed by divulging the secret of

AIDS falls harmlessly into oblivion once it hits the shield of anonymity. Hence, this aspect of the privacy is protected.

We would be derelict in our analysis of this issue, however, if we failed to recognize that the aforementioned privacy interests also subsume the right to be let alone. *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It is the infringement of this right which fuels the Blood Center's fear that future donations will be hindered if post-donation questioning of donors is permitted. While the Blood Center's fears may be genuine, the constitutional argument will not suffice to bar discovery.

The right to privacy has never been held to be absolute. *Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989); *Westinghouse, supra.* The U.S. Supreme Court has consistently held that, while an individual's right to privacy is fundamental, it can be abridged by certain overriding governmental interests.[8] *Id. Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

The Supreme Court of the United States has applied increasing levels of scrutiny corresponding to increasing levels of confidentiality intrusions. In reviewing these standards, the United States Court of Appeals for the Third Circuit stated:

> In addressing claimed violations of confidentiality interests, the United States Supreme Court has applied a flexible balancing approach. For example, in *Nixon v. Administrator of General Services*, 433 U.S. 425, 458, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977), the Court stated: "But the merit of appellant's claim of invasion of his

---

**8.** It is acknowledged that court orders which compel, restrict or prohibit discovery constitute state action which is subject to constitutional limitations. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

privacy ... must be considered in light of the specific provisions of the Act, and any intrusion must be weighed against the public interest in subjecting the Presidential materials of appellant's administration to archival screening." Most circuits appear to apply an "intermediate standard of review" for the majority of confidentiality violations, *see Barry v. City of New York,* 712 F.2d 1554, 1559 (2d Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983), with a compelling interest analysis reserved for "severe intrusions" on confidentiality. *See Thorne v. City of El Segundo,* 726 F.2d 459, 469 (9th Cir.1983), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984); *see also Whalen, supra.* (Brennan, J., concurring) ("a statute that did effect such a [serious] deprivation [of privacy] would only be consistent with the constitution if it were necessary to promote a compelling state interest").

*Fraternal Order of Police, Lodge 5 v. Philadelphia,* 812 F.2d 105, 110 (3d Cir.1987). The Court of Appeals relied on *Westinghouse, supra,* for the following balancing test that should be applied when scrutinizing the privacy interest in confidential information where there is adequate protection against unauthorized disclosure:

[W]e must engage in the delicate task of weighing competing interests. The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury for disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* (quoting *United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 578 (3d Cir.1980)). In *Westinghouse,* the court, after balancing these competing interests, al-

lowed disclosure of medical records, records which were deemed to fall within a zone of privacy, upon a showing of proper government interest. *Westinghouse,* 638 F.2d at 580.

We believe a similar showing can be made in the instant case. The information requested is completely anonymous, there will be no names or addresses on record associated with the questionnaire returned by the donor or the test results from the other recipients. There is a high degree of need for the information, as discussed earlier, for without it, the Stengers cannot hope to establish negligence. Finally, we believe that public policy mandates discovery in this instance. It is imperative to ensure responsibility in those engaging in the business of blood collection and dissemination.

Under the Pennsylvania Constitution, the right to be let alone has also been recognized. *See Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318 (1980); *Bennett v. Norban,* 396 Pa. 94, 151 A.2d 476 (1959). Similarly in Pennsylvania, this right is not absolute. *John M. and Paula T.,* 524 Pa. 306, 571 A.2d 1380 (1990); *Denoncourt v. Commonwealth, State Ethics Commission,* 504 Pa. 191, 470 A.2d 945 (1983); *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983); *In re June, 1979 Allegheny County Investigating Grand Jury, supra; Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318 (1980); *Vogel v. W.T. Grant Co.,* 458 Pa. 124, 327 A.2d 133 (1974). However, Pennsylvania has not adopted a flexible approach in its state constitutional privacy analysis. Under the law of this Commonwealth only a compelling state interest will override one's privacy rights. *Fabio v. Civil Service Commission of the City of Philadelphia,* 489 Pa. 309, 414 A.2d 82 (1980). *See Denoncourt* (Nix, J. dissenting), *supra.*

In *Fabio,* this Court had occasion to consider whether dismissal of an officer from the police force for extramarital sexual activities was constitutionally permissible. The officer argued, *inter alia,* that his dismissal violated his constitutionally protected right of privacy. After recogniz-

ing that the right to engage in extramarital sexual activities fell within the zone of privacy, this Court said, "once a court finds that an individual has a constitutionally protected right to privacy to engage in a course of conduct, the government's regulation limiting this right may only be justified by a 'compelling state interest'." *Fabio,* 489 Pa. at 323, 414 A.2d at 89 (quoting *Roe v. Wade,* 410 U.S. at 154, 93 S.Ct. at 727). In finding that "the government has a compelling state interest in the maintenance of public respect for police officers" we said, "when an employee's private life is the center of rumors, when it adversely affects his fellow workers, when it corrupts his family members, and when it results in complaints to his employer, governmental intervention is warranted." *Id.* 489 Pa. at 324–25, 414 A.2d at 90.

In this case, the state's interest in the preservation of the integrity of our volunteer blood donations is compelling. We believe that the concern for protection of the quality of blood is at least equal to, if not more important than, the concern for protecting its quantity. Every year countless numbers of our citizens need blood transfusions for emergency and elective medical procedures. We cannot insulate collecting agencies from the weighty responsibilities incumbent upon them. Allowing AIDS contaminated blood into the system may result in horrific, incalculable harm. Hence, the state's interest in allaying these concerns and restoring the integrity of the blood supply is a compelling one. This limited discovery order will foster society's interest in ensuring institutional accountability while preserving the privacy of those individuals who generously donate their blood.

Whether or not a given state interest justifies such an intrusion depends, in part, "on whether the state's intrusion will effect its purpose; for if the intrusion does not effect the state's purpose, it is a gratuitous intrusion, not a purposeful one." *Denoncourt,* 504 Pa. at 200, 470 A.2d at 949. We believe that an anonymous discovery is the least intrusive method available to us, under the facts of this

case, to protect the public interest.[9] Consequently the intrusion will not be gratuitous, but rather, purposeful, *see, e.g., Denoncourt, supra;* therefore, no constitutional rights will be compromised.[10]

This result is consistent with results reached in other jurisdictions which have concluded, in cases involving discovery from donors of tainted blood, that the limited privacy rights of donors must be balanced against the interests of society and the needs of those seeking the information, and protective discovery was allowed. *See Boutte v. Blood Systems, Inc.,* 127 F.R.D. 122 (W.D.La.1989); *Mason v. Regional Medical Center of Hopkins County,* 121 F.R.D. 300 (W.D.Ky.1988); *Belle Bonfils Memorial Blood Center v. District Court in and for the City and County of Denver,* 763 P.2d 1003 (Colo.1988); *Krygier v. Airweld, Inc.,* 137 Misc.2d 306, 520 N.Y.S.2d 475 (Sup.Ct.1187); *Gulf Coast Regional Blood Center v. Houston,* 745 S.W.2d 557 (Tex.Ct.App.1988); *Tarrant County Hospital District v. Hughes,* 734 S.W.2d 675 (Tex.Ct.App.1987).

▆▆▆ The foregoing discussion also responds to the Blood Center's argument that the discovery order is impermissible under Rule 4011(b) of the Pennsylvania Rules of Civil Procedure.[11] That rule is merely a codification of this Court's analysis of the constitutional right to privacy and as such provides no more protection than the constitutional right provides.

**9.** It is important to note that on May 20, 1991, the American Red Cross, our nation's leading blood collection agency, announced wideranging changes in its blood screening and testing procedures. *See, e.g.,* Red Cross Orders Sweeping Changes at Blood Centers, New York Times, May 20, 1991, at A 1, col. 3.

**10.** In November, 1990, the Pennsylvania legislature passed the Confidentiality of HIV–Related Information Act ("Act") which, *inter alia,* prohibits the dissemination of AIDS records except where a compelling need exists, which cannot be accommodated by other means. While this Act was not in effect at the time this lawsuit was instituted and was not considered by the lower courts, we believe our decision today reflects the policies expressed by the legislature. *See* 35 P.S. §§ 7607(a)(10), 7608(a)(1), (c), (f), (h).

**11.** See n. 6 *supra* for text of rule.

■ Nor would the instant procedure be antagonistic to the privilege created under Rule 4011(c) [12] because of its anonymous nature. The privilege asserted here by the hospital is the patient-physician privilege which provides that "no physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient...." 42 Pa.C.S. § 5929. As this Court pointed out in *In re June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 415 A.2d 73 (1980), Pennsylvania law distinguishes between information communicated to a physician by a patient and information acquired through examination and observation. In *Allegheny County*, we held that the patient-physician "privilege is limited to information which would offend the rationale of the privilege, *i.e.*, information directly related to the patient's communication and thus tending to expose it." *Id.*, 490 Pa. at 149–50, 415 A.2d at 77.

We agree with the trial court's conclusion that, "[v]iewing the requested information with this principle in mind, we believe that only the *identity* of the recipients could potentially be subjected to the privilege." *Stenger v. Lehigh Valley Hospital Center, et al,* No. 87–C–586, slip op. at 9 (Court of Common Pleas of Lehigh County, April 22, 1988) (emphasis added).

With regard to the test results of the other recipients of the blood, the test, as mentioned above, is whether a disclosure might blacken the character of the patient. The confidentiality ordered by the Superior Court will prevent this sensitive information from reaching the public. Thus the reputation and character of any recipient who contracted AIDS will remain insulated from public view. Moreover, despite the appellants' assertions to the contrary, we are confident that the mechanisms which will prevent the disclosure of this information will operate throughout the entire proceeding so that the information will remain confidential.

12. See n. 6 *supra* for text of rule.

The assurance of anonymity will also diffuse the argument that the blood supply would be significantly impaired by an exodus of potential donors fearing involvement in future litigation.[13] Thus, we reject the contention of the Blood Center that such inquiries would be detrimental to the maintenance of an adequate blood supply.

Accordingly, we affirm the Superior Court's order granting limited discovery from the donor and granting the request for disclosure of the results of tests performed on other recipients of the blood or blood products of the donor and refusing to disclose the identities of the donor or the other recipients of the donor's blood or blood products.

---

**13.** See p. 801 *supra* for the discussion of the anonymous nature of the discovery.