**In the Interest of M.B., an Older Adult.**

**York County Area Agency on Aging, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 9, 1996.
Decided Dec. 12, 1996.

Jacqueline C. Barnett, York, for appellant.

Ellen C. Morris, York, for appellee.

Before FRIEDMAN and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

LEADBETTER, Judge.

York County Area Agency on Aging (Agency) appeals from the order of the Court of Common Pleas of York County entered pursuant to Section 7(h)(2) of the Older Adults Protective Services Act, Act of November 6, 1987, P.L. 381, as amended 35 P.S. § 10217(h)(2) (the Act). The Act, which provides for services to protect the health, safety and welfare of older adults,[1] also establishes a statewide reporting and investigative system for suspected abuse, neglect, exploitation and abandonment of such persons. The Act provides, in pertinent part:

### § 10215. Reporting; protection from retaliation; immunity

(a) **Reporting.**—Any person having reasonable cause to believe that an older adult is in need of protective services may report such information to the agency which is the local provider of protective services.

. . .

### § 10216. Investigations of reports of need for protective services

(a) **Investigation.**—It shall be the agency's responsibility to provide for an investigation of each report made under section 5.

. . .

### § 10217. Provision of services; access to records and persons

. . .

(d) **Access to records.**—The agency shall have access to all records relevant to:

(1) Investigations of reports under section 6.

(2) Assessment of client need.

(3) Service planning when an older adult's need for protective services has been or is being established.

(4) The delivery of services arranged for under the service plan developed by the agency to respond to an older adult's assessed need for specific services.

. . .

(g) **Access by consent.**—The agency's access to confidential records held by other agencies or individuals and the agency's access to an older adult reported to be in need of protective services shall require the consent of the older adult or a court-appointed guardian except as provided for under this section or section 10.

(h) **Denial of access to records.**—If the agency is denied access to records necessary for the completion of a proper investigation of a report or a client assessment and service plan, or the delivery of needed services in order to prevent further abuse, neglect, exploitation or abandonment of the older adult reported to be in need of protective services, the agency may petition the court of common pleas for an order requiring the appropriate access when either of the following conditions apply:

(1) The older adult has provided written consent for any confidential records to be disclosed and the keeper of the records denies access.

(2) The agency can *demonstrate* that the older adult is denying access to records because of incompetence, coercion, extor-

---

1. An "older adult" is defined by the Act as a person "who is 60 years of age or older." *Id.* at Section 3, 35 P.S. § 10213. Moreover, an "older adult in need of protective services" is defined as follows:

An incapacitated older adult who is unable to perform or obtain services that are necessary to maintain physical or mental health, for whom there is no responsible caretaker and who is at imminent risk of danger to his person or property.

*Id.* The "protective services" available under the Act are those "activities, resources and supports provided to older adults ... to detect, prevent, reduce or eliminate abuse, neglect, exploitation and abandonment." *Id.*

tion or justifiable fear of future abuse, neglect, exploitation or abandonment.

Sections 5–7, 35 P.S. §§ 10215–10217 (footnotes omitted) (emphasis added). Specifically at issue is whether the use of the term "demonstrate" in Section 7(h)(2) of the Act requires an evidentiary hearing before the court can grant an order for the production of records.

In this case, the Agency received a referral indicating that M.B. may be vulnerable to financial exploitation. Shortly thereafter, the Agency petitioned the trial court *ex parte* for an order authorizing access to M.B.'s medical records, power of attorney, financial records and utility statements. In its petition, the Agency alleged, *inter alia*, that M.B. had refused access to her records and due to her refusal, it was unable to complete its investigation into the allegations or its assessment of M.B.'s need for protective services. The Agency further alleged that based upon two conversations a caseworker had with a physician, it believed that M.B. had refused access to her records due to incompetence.[2] The trial court granted the Agency's petition without holding a hearing or argument, but appointed counsel to represent M.B. and ordered service of the order upon M.B.[3] (Order, 6/1/95).

Thereafter, counsel for M.B. filed a motion to vacate the order, contending that Section 7(h) requires notice and a hearing on the issue of, *inter alia*, incompetence prior to ordering the production of records. Following argument on the motion, the trial court held that the Agency's petition was insufficient in that it merely alleged that M.B. "may be vulnerable" to financial exploitation and, therefore, suspended the order of 6/1/95 and granted the Agency the opportunity to request a hearing on the matter. At the Agency's request, the trial court certified the matter for an interlocutory appeal pursuant to 42 Pa.C.S.A. § 702(b), and this Court subsequently granted permission to appeal under Pa.R.A.P. 1311.

On appeal, the Agency contends that a strict construction of Section 7(h)(2) does not require the trial court to hold a hearing regarding the competence of the older adult prior to granting access to records. M.B. contends, on the other hand, that the grant of a petition for access without notice and a hearing violates her constitutional right to privacy and deprives her of due process of law.

■ It is well settled that the right to privacy from government intrusion is protected by both the United States Constitution and the Pennsylvania Constitution. In *Stenger v. Lehigh Valley Hospital Center*, 530 Pa. 426, 609 A.2d 796 (1992), our Supreme Court stated:

> There is no longer any question that the United States Constitution provides protection for an individual's right of privacy. At least two distinct types of privacy interests have been recognized. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." This Court has recognized these same interests under the Pennsylvania Constitution.

*Id.* at 434, 609 A.2d at 800 (citations omitted). The right at issue herein is M.B.'s right to avoid disclosure of personal information. This right, however, is not absolute.

In *Stenger*, the Supreme Court acknowledged that although the right to privacy is fundamental, it can be abridged in order to further a compelling state interest. *Id.* at 437, 609 A.2d at 802. Moreover, whether the state's interest justifies a particular intrusion depends, in part, "on whether the state's intrusion will effect its purpose; for if the intrusion does not effect the state's purpose, it is a gratuitous intrusion, not a purposeful one." *Id.* at 438, 609 A.2d at 802.

In this case, the state's interest is clearly set forth in Section 2 of the Act:

---

2. The Agency argues that these averments were substantively sufficient. We disagree. They are far too vague and speculative to meet the Agency's burden to demonstrate actual incompetence.

3. Although the order did not include a provision staying its effect, it appears that the Agency refrained, either by agreement or otherwise, from taking action to enforce the order until appointed counsel had an opportunity to file papers on behalf of M.B.

It is declared the policy of the Commonwealth of Pennsylvania that older adults who lack the capacity to protect themselves and are at imminent risk of abuse, neglect, exploitation or abandonment shall have access to and be provided with services necessary to protect their health, safety and welfare. It is not the purpose of this act to place restrictions upon the personal liberty of incapacitated older adults, but this act should be liberally construed to assure the availability of protective services to all older adults in need of them. Such services shall safeguard the rights of incapacitated older adults while protecting them from abuse, neglect, exploitation and abandonment. It is the intent of the General Assembly to provide for the detection and reduction, correction or elimination of abuse, neglect, exploitation and abandonment, and to establish a program of protective services for older adults in need of them.

35 P.S. § 10212. This interest is certainly compelling. Moreover, the types of records requested by the Agency are sources of information regarding M.B.'s competency and susceptibility to financial exploitation, and thus are reasonably calculated to effect the purposes of the Act. Accordingly, we conclude that when the circumstances outlined in Section 7(h)(2) exist, granting an agency access to personal records does not offend the Constitution of either the United States or the Commonwealth.

This determination ends only our threshold inquiry, however, for the Agency's ultimate substantive right to the records is not so much in issue as the appropriate procedural vehicle for obtaining them. This question raises concerns implicated by both the Fourth Amendment to the United States Constitution (as well as Article I, § 8 of the Pennsylvania Constitution) and the due process clause.[4] It may be noted that these concerns are not unrelated. Both the Fourth Amendment and its Pennsylvania counterpart prohibit searches which are *unreasonable*.[5] Similarly, the touchstone of procedural due process is *fundamental fairness*.[6]

With these criteria in mind we must examine the Act. Although silent as to the exact procedures to be followed, it provides ample guidance for us to reject the Agency's argument that an *ex parte* search warrant type procedure was contemplated by the legislature. First, as quoted above, Section 7(g-h) clearly requires that the agency first attempt to obtain the necessary records by consent before seeking an order from the court. Moreover, the applicable regulations promulgated by the Department of Aging provide that:

> If the agency is denied access to records necessary for the completion of a proper investigation of a report ... the protective services caseworker shall clearly inform the party denying access to the records of the legal authority for access as set forth in section 7 of the act (35 P.S. § 10217) by the agency and the available recourse through a court order. If the party continues to deny access to relevant records, the agency may petition the court of common pleas for an order requiring the appropriate access....

6 Pa.Code § 15.62(c). We find these requirements inherently inconsistent with the *ex parte* procedure used to obtain search warrants, where the element of surprise is deemed necessary to prevent the destruction of evidence.

■ Moreover, the access to a court order is described in both the Act and the regulations as by way of a "petition" to the court. Procedures governing petitions are clearly set out in Pa.R.C.P. 206.1–206.7. We deem the use by the legislature of a term having a specific meaning under the Rules of Civil

---

**4.** Court orders which compel, restrict or prohibit discovery are deemed to constitute state action subject to constitutional limitations. *Stenger, supra* at 435 n. 8, 609 A.2d at 801 n. 8.

**5.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ..." U.S. *Const. amend.* IV. "The peo-

ple shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures ..." Pa. Const., art. I, § 8.

**6.** See *School Dist. of Philadelphia v. Pa. Milk Marketing Board*, 683 A.2d 972 (Pa.Cmwlth. 1996), quoting *Plowman v. Plowman*, 409 Pa. Superior Ct. 143, 151, 597 A.2d 701, 705 (1991).

Procedure to be intentional. See generally: *Crusco v. Insurance Co. of North America*, 292 Pa. Superior Ct. 293, 437 A.2d 52 (1981). Moreover, Pa.R.C.P. 250 provides that the rules "shall apply to all civil actions and proceedings at law and in equity." While not a civil action, application to the court for an access order is clearly a "proceeding." Accordingly, we do not construe the term "demonstrate" in Section 7(h)(2) to require a hearing in all cases, but hold that the agency must follow the practice for petitions mandated by the Rules of Civil Procedure.

■■■ Turning to the procedures mandated for petition practice under the Rules, we note that they provide sufficient safeguards to protect an older adult's constitutional right to notice and an opportunity to be heard. Pa.R.C.P. 206.2 provides for answers to be filed to petitions. Implicit in Rule 206.2 is that the respondent be given notice of the petition so as to be able to respond in an answer. The Rules also provide for such procedures as court ordered discovery regarding disputed issues of fact, evidentiary hearings and argument by the parties. See Pa.R.C.P. 206.5 through 206.7. After reviewing a petition and prior to issuance of a rule to show cause, the trial court may determine, sua sponte, that a petition lacks merit on its face or that the matter may best be resolved without a formal fact finding procedure. See: Explanatory Comment to Pa.R.C.P. 206.4.

This array of options by the trial court is substantially identical to those available in discovery disputes in civil cases or proceedings to enforce administrative subpoenas [7], in both of which sensitive personal information is sometimes sought. There, whether in the context of a motion to compel discovery which has been requested and refused, or of a subpoena to which a motion for protective order has been filed, the court may decide the issue based upon the motion and answer, request legal briefs, hear oral argument, or order an evidentiary hearing. Finally, while the court *may* in such a dispute order that documents produced be treated as confidential, the Act provides the additional protection of mandating confidentiality in all cases. *See* Section 9, 35 P.S. § 10219.

■■ For the reasons stated above, we believe that these procedures fully satisfy both the fundamental fairness required by the due process clause and the reasonableness required by the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution.[8]

■■ Turning to the particular circumstances of this case, although the Agency initially requested, and the lower court erroneously entered, an *ex parte* order, the court cured its error by immediately appointing counsel and immediately vacating the order upon that counsel's request, giving the older adult an opportunity to be heard. Given that the Agency's affidavit, albeit undisputed, did not aver sufficient facts to show incompetence, and that underlying facts material to the Agency's entitlement to the records *were* disputed, the trial court appropriately exercised its discretion under the Act by ordering that the Agency could request a hearing if it wished to further pursue access to the records.

The order of the court of common pleas is affirmed.

### ORDER

AND NOW, this 12th day of December, 1996, the order of the Court of Common

---

7. We note that many agencies given the statutory responsibility to conduct investigations are given subpoena power. *See, e.g.,* 66 Pa.C.S. § 309. Here, the legislature effected the same purpose by the access order provision of Section 7(h). This reinforces our conclusion that the above-described array of procedures were contemplated as appropriate for resolution of disputes concerning access to records.

8. Because we construe Section 7(h) of the Act to require the procedures applicable to petitions under the civil rules, we need not decide whether an *ex parte* procedure, were it mandated, would pass constitutional muster. We also need not address, and specifically do not here decide, the issue of temporary *ex parte* orders in an emergency situation, such as that provided in Section 10 of the Act, 35 P.S. § 10220, where the Agency has shown that the older adult is at imminent risk of death or serious physical harm unless emergency services are provided.

Pleas of York County in the above-captioned matter, is hereby affirmed.

SILVESTRI, Senior Judge, concurs in the result only.