# Leskin v. Christman

C.P. of Carbon County, no. 04-3384.

*Brian B. Gazo,* for plaintiff.
*Joseph V. Sebelin Jr.,* for defendant.

NANOVIC, *P.J.,* January 20, 2006—

## FACTUAL BACKGROUND

On August 3, 2005, David Christman (Father) instituted the present proceedings seeking to modify the terms of a stipulated custody order dated November 24, 2004, and asking that primary custody of the parties' 4-year-old daughter Mallory (Child) be awarded to him. Five days prior to the scheduled custody hearing, Father filed a motion for special relief requesting, inter alia, that he be permitted to inspect Julia Leskin's (Mother) medical/mental health records for the previous five years or, in the alternative, that the court conduct an in camera review of these records.

In accordance with Pa.R.C.P. 1915.5(a), the custody hearing was held as scheduled. At the time of this hearing, extensive testimony was taken regarding those factors which would legitimately affect Mallory's physical, intellectual, moral, and spiritual well-being. The hearing also developed that the primary basis for Father's motion for special relief was Mother's hospitalization and treatment in a mental health facility in May 2005.

On May 9, 2005, a Monday, Mother became upset following an argument with her boyfriend. During the previous six months or more she had been treating with a psychiatrist and been prescribed medication for depres-

sion. As of May 9, 2005, she was also taking prescribed pain medication for injuries sustained in a motor vehicle accident. That evening, after taking her medication, she visited a local tavern with some friends, consumed alcohol, and awoke the following morning in a hospital.

Mother had no recollection of what occurred between the time she arrived at the tavern and when she awoke. Her boyfriend testified that he had found Mother asleep in bed when he returned home after their argument and that, when he was unable to awake her, he called 911.

Not knowing what had happened, and faced with the possibility of being involuntarily committed, Mother voluntarily admitted herself into the Mental Health Unit of the Gnaden Huetten Memorial Hospital on May 10, 2005, where she remained until the following Monday, May 16, 2005. At the custody hearing, Mother was questioned both by her counsel and by Father's counsel about her existing and past mental health treatment, the circumstances leading to her hospitalization on May 9, and her present mental status. In this regard, Mother testified that she continues under the supervision of a psychiatrist and visits a therapist weekly.

At the conclusion of the hearing, we requested counsel to provide us with a legal memorandum in support of their respective positions regarding Father's request for the medical records from Mother's treatment at the Gnaden Huetten Memorial Hospital and the treatment records of her psychiatrist. For these purposes, and depending on our ruling, the hearing record was kept open for possible additional testimony. The memoranda requested by the court have been provided and we now address Father's request for Mother's medical records.

## DISCUSSION

In a general sense, we have been asked to determine whether Mother's medical records must be disclosed as relevant information in deciding the best interest of the parties' daughter. In a more specific sense, we must determine whether Mother's mental health records are protected from disclosure by the confidentiality provision of Pennsylvania's Mental Health Procedures Act (MHPA), 50 P.S. §7111, the psychotherapist-patient privilege found at 42 Pa.C.S. §5944, or the constitutional right to privacy found in Article I, Section 1 of the Pennsylvania Constitution.

### *Psychotherapist-Patient Privilege*

In Pennsylvania, the psychotherapist-patient privilege reads as follows:

"Section 5944. Confidential communications to psychiatrists or licensed psychologists

"No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client." 42 Pa.C.S. §5944.

The term "information" as used in this statute has been narrowly defined and is restricted to communications made or information divulged by the patient to the psy-

chotherapist. *Phillips' Estate,* 295 Pa. 349, 145 A. 437 (1929) (distinguishing between information conveyed by communications made from the patient to a physician and that learned through physical examination or observation, and holding that the doctor-patient privilege, now found at 42 Pa.C.S. §5929, applies only to patient's communications); *Grimminger v. Maitra,* 887 A.2d 276, 279 (Pa. Super. 2005) (acknowledging that "our case law has drawn a distinction between information learned by a physician through communication to him by a patient and information acquired through examination and observation").

Further underlying the exercise of the privilege is the requirement that a psychotherapist-patient relationship exists. "In the context of a psychotherapist, the client must be seeking treatment, counseling or advice for a mental or emotional problem." *M. v. State Board of Medicine,* 725 A.2d 1266, 1268 (Pa. Commw. 1999) ("A court-ordered examination does not invoke this privilege because treatment is not contemplated in conducting the examination."); *Matter of Adoption of Embick,* 351 Pa. Super. 491, 506 A.2d 455 (1986), *appeal denied,* 513 Pa. 634, 520 A.2d 1385 (1987) (holding that a parent's voluntary submission to examination at the request of a county children and youth agency for purposes of assessing the potential for family reunification and the best interests of a minor child did not constitute treatment, counseling or advice for any mental or emotional problems, nor create a doctor-patient or other privileged relationship contemplated by the statute and, therefore, did not bar relevant testimony by the psychologist at an involuntary termination proceeding); see also, *Commonwealth v. G.P.,* 765 A.2d 363, 365 (Pa. Super. 2000) (em-

phasizing that different standards apply in proceedings in criminal court and those in a civil proceeding when it relates to a court-directed examination and the results obtained therefrom).

Although worded as a testimonial privilege, this statute, as interpreted by our appellate courts, shields from disclosure all confidential communications made and information given by a patient to a psychiatrist or licensed psychologist, or their agent, for purposes of obtaining or facilitating treatment. *Commonwealth v. Simmons,* 719 A.2d 336, 341 (Pa. Super. 1998) (finding confidential communications by alleged child victim to any member of a treatment team organized to treat the mentally ill and supervised by a licensed psychiatrist protected from disclosure to a criminal defendant).

Significantly, for purposes of this case, the privilege includes the psychotherapist's client files which might reveal confidential communications of the client. *Simmons,* 719 A.2d at 341. The privilege, however, does not include the psychotherapist's observations, diagnoses, opinions, evaluations or treatment plans. *Id.;* see also, *Commonwealth v. Carter,* 821 A.2d 601, 608 (Pa. Super. 2003) ("[T]he [psychiatrist-patient] privilege is not designed to specifically protect the psychotherapist's own opinion, observations, [or] diagnosis. . . .").

Critical to the exercise of the privilege is an understanding of its rationale: "to encourage people to seek professional help for their mental or emotional problems, and that purpose is best accomplished when people in need of psychotherapeutic treatment know that what they tell their therapist during treatment will not be disclosed to anyone." *Embick,* 351 Pa. Super. at 499-500, 506 A.2d

at 460. "By preventing the [therapist] from making public any information which would result in humiliation, embarrassment or disgrace to the client, the privilege is designed to promote effective treatment and to insulate the client's private thoughts from public disclosure." *Commonwealth v. Kyle,* 367 Pa. Super. 484, 500, 533 A.2d 120, 128 (1987), *appeal denied,* 518 Pa. 617, 541 A.2d 744 (1988).

Where the privilege applies, the privileged material may not be subjected to even in camera review by the trial court. *Simmons,* 719 A.2d at 341; *Kyle,* 367 Pa. Super. at 505, 533 A.2d at 131 (refusing to compromise what it determined was an absolute privilege from disclosure of confidential communications made between a licensed psychologist and his client where, as the court found applies to this privilege, a compelling public interest supports the privilege; finding the public interests supporting the privilege outweigh the accused's rights guaranteed by the Confrontation Clause of the Sixth Amendment of the United States Constitution and the Due Process Clause of the Fourteenth Amendment to review arguably useful information protected by the privilege); see also, *Commonwealth v. Counterman,* 553 Pa. 370, 392, 719 A.2d 284, 295 (1998) (finding that the psychiatrist/psychologist-patient privilege outweighed a defendant's Sixth Amendment right to cross-examination, as well as his right to due process), *cert. denied sub nom., Counterman v. Pennsylvania,* 528 U.S. 836, 120 S.Ct. 97, 145 L.Ed. 2d 82 (1999).

In asking us to override the privilege, Father argues that the interests at stake in these proceedings—the best interest and proper placement of the parties' daughter—are paramount to any benefit Mother may derive from

nondisclosure of her medical records and that, as part of our obligation to conduct a full and comprehensive hearing, we should not be deprived of material testimony concerning the mental or emotional condition of either parent necessary to a proper determination of the issues before the court.[1] In reality, what Father is asking is that we balance the importance of producing evidence relevant to assessing the best interest of a child against the value of a legislatively created privilege in favor of confidentiality, and find that the scales tip in favor of disclosure. To do what Father requests, to balance the merits of a statutory privilege against a party's claimed need for disclosure, presupposes that the court may unilaterally substitute its judgment for the presumptively valid judgment of the legislature and that to do so, on an ad hoc basis, is preferable to a rule of uniform application.

The flaw in this position is Father's belief that when important, personal rights are at stake, the privilege must yield in favor of potentially significant, reliable evidence. Conceptually, this belief is contrary to the legal premise on which a privilege is based: that some compelling interest, extrinsic to the truth-finding process, is of greater value.

" '[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.' *Hutchison v. Luddy,* 414 Pa. Super. 138, 146, 606 A.2d 905, 908 (1992) (quoting *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct.

---

1. Without question, psychiatric considerations are important in deciding upon a child's best interest, however, they are not determinative of the many factors the court must take into account. *In re Donna W.,* 325 Pa. Super. 39, 58, 472 A.2d 635, 644 (1984).

1635, 1648, 60 L.Ed.2d 115 (1979)). Thus, courts should accept testimonial privileges 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.' *In re Grand Jury Investigation,* 918 F.2d 374, 383 (3d Cir. 1990) (quoting *Trammel v. United States,* 445 U.S. 40, 46, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980))." *In re Subpoena No. 22,* 709 A.2d 385, 388 (Pa. Super. 1998) (quoting *Commonwealth v. Stewart,* 547 Pa. 277, 282, 690 A.2d 195, 197 (1997)); see also, *In re Estate of Wagner,* 584 Pa. 49, 57-58, 880 A.2d 620, 625 (2005) (finding that notwithstanding the important individual interests in vindicating the death of a 14-month-old child from alleged abuse while in foster care, by requiring child death reviews to be kept confidential, the legislature had as its objective the fostering of an unreserved, comprehensive internal investigation and evaluation of actions taken and foregone by C&Y and DPW, which objective would be compromised if open to public scrutiny, thereby placing such reviews beyond the scope of discovery).

The legislature having predetermined the value of the psychotherapist-patient privilege by its enactment, here a codification of existing principles of common law, "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. . . . [I]f the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected.

An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.' " *Jaffee v. Redmond,* 518 U.S. 1, 17-18, 116 S.Ct. 1923, 1932, 135 L.Ed. 2d 337 (1996) (recognizing the psychotherapist-patient privilege for the first time) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 393, 101 S.Ct. 677, 684, 66 L.Ed.2d 584 (1981)).

Consequently, when a privilege is properly invoked, unless the purpose of the privilege would be frustrated by its enforcement or extraordinary circumstances exist, the privilege and the public policy underlying the privilege must not be unpredictably discarded. Even then, when the interests protected by the privilege are relaxed or outweighed, the exceptions engrafted on the privilege are confined to rare and exceptional circumstances, or the disclosure is narrowly limited to the exigencies presented (*e.g.,* a duty to warn) rather than a wholesale disclosure of protected information. See *In re Subpoena No. 22,* 709 A.2d at 391 (finding a narrow exception qualifying the privilege, after the client's death, when necessary as part of a criminal investigation into the client's death, enforcement of the privilege in this context being contrary to the client's interests); *Emerich v. Philadelphia Center for Human Development,* 554 Pa. 209, 231-32, 720 A.2d 1032, 1043 (1999) ("[W]e find that in Pennsylvania, based upon the special relationship between a mental health professional and his patient, when the patient has communicated to the professional a specific and immediate threat of serious bodily injury against a specifically identified or readily identifiable third party, and when the professional determines, or should determine under the standards of the mental health profession, that

his patient presents a serious danger of violence to the third party, then the professional bears a duty to exercise reasonable care to protect by warning the third party against such danger"; exception applies equally to both patient-therapist confidentiality and that imposed by MHPA).

In *In re Subpoena No. 22,* the court further stated:

"When interpreting the psychotherapist-client statutory privilege, we are guided by the same principles that apply to the attorney-client privilege. *Kalenevitch v. Finger,* 407 Pa. Super. 431, 438, 595 A.2d 1224, 1228 (1991). See also, 42 Pa.C.S. §5944 (confidential communications between psychologist or psychiatrist and client shall be on same basis as between attorney and client). Once the party asserting a privilege shows that the privilege is properly invoked, the burden shifts to the party seeking the disclosure to show that disclosure of the information will not violate the accorded privilege. *In re Investigating Grand Jury,* 527 Pa. 432, 440, 593 A.2d 402, 406 (1991). (citations omitted) See also, *Brennan v. Brennan,* 281 Pa. Super. 362, 372, 422 A.2d 510, 515 (1980) (citing *Cohen v. Jenkintown Cab Co.,* 238 Pa. Super. 456, 464, 357 A.2d 689, 693-94 (1976), *appeal denied* (1976)) (stating where privilege exists for specific purpose; party seeking disclosure has burden of establishing prima facie case that purpose of privilege would be frustrated by exercise of privilege)." 709 A.2d at 388.

Here, as in *Simmons,* the record does not contain a clear statement of what information is actually contained in Mother's psychiatrist's file.[2] For this reason, as was

---

2. Because of this deficiency in the record, we have considered permitting further discovery of the remainder of the psychiatrist's file

the case in *Simmons,* we accept the movant's assertion that all information in the file consists of communications made and information given by Mother, or would reveal the substance of such communications and disclosures. Father has made no showing that Mother's assertion of the privilege as applied to this information is contrary to the public policy underlying the privilege. In fact, just the contrary is argued by Mother.

Comprehending both the need to promote effective treatment and to insulate the client's private thoughts from public disclosure, the psychotherapist-client privilege is "based upon a strong public policy that confidential communications made by a client to the psychotherapist should be protected from disclosure, absent consent or waiver." *In re Subpoena No. 22,* 709 A.2d at 388.[3] Given

---

or a limited in camera review of any non-privileged, but confidential, material contained in the file. We find, however, that Father has made no distinction between privileged and non-privileged materials which may be contained in the psychiatrist's file, has filed to identify any potentially non-privileged materials and, therefore, has waived the issue. *Kraus v. Taylor,* 710 A.2d 1142, 1146-47 (Pa. Super. 1998).

3. Both the psychotherapist-patient privilege and the statutory privilege set forth in section 7111 of the MHPA are subject to implicit waiver when a party placed the confidential information at issue in a civil lawsuit. *Rost v. State Board of Psychology,* 659 A.2d 626, 629 (Pa. Commw. 1995) (discussing the psychiatrist/psychologist-patient privilege), *appeal denied,* 543 Pa. 699, 670 A.2d 145 (1995); *Nicholaides v. Weber,* 133 Pitts. Leg. J. 260, 261 (1985) (discussing section 7111 of the Mental Health Procedures Act). The rationale of the decisions finding implicit waiver is that our legislature could not have intended the miscarriage of justice that would otherwise result to civil defendants. *Kraus,* 710 A.2d at 1145.

In this case, Father claims Mother has waived the privilege merely by participating in the proceedings. We are not persuaded by this argument. First, it was Father, not Mother, who commenced the instant proceedings with his filing of a petition to modify custody on August

the importance of these policies, the privilege "must prevail under most circumstances." *Id.* at 389 (listing numerous cases in which a criminal defendant's constitutional rights to confrontation and compulsory process must yield to the privilege); see also, *M. v. State Board of Medicine,* 725 A.2d at 1269 n.13 (stating in the context of a civil proceeding that "the type of case in which the psychotherapist-patient privilege is claimed is irrelevant as to whether the privilege does or does not exist"). As illustrated by the cases listed in *In re Subpoena No. 22,* notwithstanding the relevance and probative value of the information sought in each case, the reasons proffered were found insufficient to overcome the legislatively created privilege.

In this case, Father has failed to show that disclosure of the materials requested would not violate the privilege or would not be inconsistent with its purposes. Nor has Father presented any extenuating circumstances justifying a relaxation or giving way of the privilege.

Therefore, in accordance with the foregoing, to the extent the records requested contain confidential communications made by Mother to her psychiatrist, or make any reference to such communications, they are privileged. Further, accepting that the file contains protected communications, even an in camera review is prohibited. In short, the psychotherapist-patient privilege makes no exception of the type argued by Father for custody proceedings, and we find none.

---

3, 2005. Second, and more importantly, it is not Mother who has placed her mental condition directly at issue, but the law which requires, in custody proceedings, that all factors concerning the best interest of a child be examined.

*Mental Health Procedures Act*

Section 7111 of the Mental Health Procedures Act provides:

"Section 7111. Confidentiality of records

"(a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:

"(1) those engaged in providing treatment for the person;

"(2) the county administrator, pursuant to section 110 [regarding applications, petitions, statements and certifications required under the provisions of the Mental Health Procedures Act];

"(3) a court in the course of legal proceedings authorized by this act; and

"(4) pursuant to federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a federal agency.

"In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent. . . .

"(b) This section shall not restrict judges of the courts of common pleas, mental health review officers and county mental health and mental retardation administrators from disclosing information to the Pennsylvania State Police or the Pennsylvania State Police from disclosing information to any person, in accordance with the provisions of 18 Pa.C.S §61059(c)(4) (relating to persons not to possess, use, manufacture, control, sell or transfer firearms)." 50 P.S. §7111.

The protection provided by this section is broader than that under the psychotherapist-patient privilege: it applies "to *all* documents regarding one's treatment, not just medical records," and its confidentiality directive is mandatory, not discretionary—"it is a requirement." *Zane v. Friends Hospital,* 575 Pa. 236, 247, 836 A.2d 25, 32 (2003). (emphasis in original)

Of the enumerated exceptions, only the third exception, that pertaining to disclosure to a court in the course of legal proceedings authorized by the MHPA, arguably applies. When viewed closer, however, this exception does not assist Father. Under the precise language of section 7111(a)(3), "a patient's inpatient mental health treatment records may be used by a court *only* when the legal proceedings being conducted are *within the framework* of the MHPA, that is, involuntary and voluntary mental health commitment proceedings." *Commonwealth v. Moyer,* 407 Pa. Super. 336, 341, 595 A.2d 1177, 1179 (1991) (emphasis in original), *appeal denied,* 529 Pa. 656, 604 A.2d 248 (1992) (barring the Commonwealth's obtaining and use at trial of a criminal defendant's admission contained in hospital records regarding the defendant's psychiatric treatment; a criminal prosecution is not a legal proceeding authorized by the MHPA). In accordance with section 7103, the MHPA establishes the rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons. See *e.g.,* 50 P.S. §7303 (involuntary emergency treatment); 50 P.S. §7304 and 7305 (court-ordered involuntary treatment); 50 P.S. §7306 (transfer of persons in involuntary treatment) and 50 P.S. §7204 and §7206 (voluntary mental health com-

mitment determinations). The confidentiality protection of the Act does not apply to any voluntary outpatient treatment.

Section 7111 has as its clear objective that all documentation covering persons in treatment be kept confidential, the confidentiality of mental health records being the sine qua non of effective treatment. *Zane,* 575 Pa. at 250, 836 A.2d at 33.

"The importance of confidentiality cannot be overemphasized. To require the Hospital to disclose mental health records during discovery would not only violate [the patient's] statutory guarantee of confidentiality, but would have a chilling effect on mental health treatment in general. The purpose of the Mental Health Procedures Act of seeking 'to assure the availability of adequate treatment to persons who are mentally ill,' 50 P.S. §7102, would be severely crippled if a patient's records could be the subject of discovery in a panoply of possible legal proceedings. Moreover, to release such documents for review during discovery, only to have an appellate court reverse such decision on appeal, would result in the confidential nature of the records being forever lost." *Id.* at 250-51, 836 A.2d at 34 (holding that section 7111 sets forth a bright line bar to the disclosure of mental health records, even to the court, thereby depriving the alleged victim of a brutal physical and sexual assault by a mental health patient from potentially relevant information in her personal injury claim against her assailant and the hospital where he was an inpatient).

Just as the MHPA forbids disclosure in a negligence action *(e.g., Zane)* and in a criminal proceeding *(e.g., Moyer)* of information made confidential by its provi-

sions, it similarly broaches no exception for custody proceedings.

## Constitutional Guarantee to Privacy

Having concluded that the psychotherapist-patient privilege and the MHPA bar, respectively, the psychiatric treatment and hospital records Father seeks, whether this information is further barred from disclosure by the patient's constitutional right to privacy found in Article I, Section 1, of the Pennsylvania Constitution, is an issue for which extended discussion is unnecessary and would be unwise. See *Wertz v. Chapman Township,* 559 Pa. 630, 633, 741 A.2d 1272, 1274 (1999) ("It is axiomatic that if an issue can be resolved on a non-constitutional basis, that is the more jurisprudentially sound path to follow.").

We feel it appropriate, however, to note that this basis, while having in common with the statutory protections the principle of confidentiality, has a constitutional foundation whose protections are far greater than those which reside in any specific statute. And while the sources and limits of the right to privacy under the Pennsylvania and United States Constitutions may be disputed—see *In re "B",* 482 Pa. 471, 486, 394 A.2d 419, 425 (1978) (plurality)—two different kinds of privacy interests have been identified: the individual interest in avoiding disclosure of personal matters and the interest in independence in making certain kinds of important decisions. *Whalen v. Roe,* 429 U.S. 589, 599-600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1976) (as to the federal constitution); *Stenger v. Lehigh Valley Hospital Center,* 530 Pa. 426, 434, 609 A.2d 796, 800 (1992) (as to the state con-

stitution). Nor is the right absolute. *Id.* at 437, 609 A.2d at 802.

It is the first of these interests, the interest in avoiding disclosure of personal matters, which is implicated in this case. Within this interest, at its center, is the right to have one's thoughts and mental processes intrinsic to individuality excluded from others. The production of an entire psychiatric history, as requested by Father and in contrast to a more focused court-ordered examination, infringes upon the patient's "most intimate emotions, fears, and fantasies." *In re "B"*, 482 Pa. at 486, 394 A.2d at 425-26 (holding that the mother's right of privacy precluded the release of psychiatric records ordered by the trial court to assist in the placement of a child in the context of a disposition hearing in a juvenile delinquency proceeding in which the court explicitly recognized that even though its "holding may, in some cases, make it more difficult for the court to obtain all the information it might desire regarding members of the juvenile's family, or about the juvenile's friends, neighbors, and associates, [t]he individual's right of privacy . . . must prevail . . . ."); *Commonwealth ex rel. Gorto v. Gorto*, 298 Pa. Super. 509, 516, 444 A.2d 1299, 1302 (1982) (acknowledging the relevance of *In re "B"* to a custody proceeding and stating that "delving into the private records of a custodial parent's psychiatric history is an impermissible invasion of privacy"); see also, *In the matter of T.R.*, 557 Pa. 99, 731 A.2d 1276 (1999) (concluding that a mother's state constitutional right to privacy precluded the trial court from compelling her to participate in a psychological evaluation intended to provide information important to a determination of the children's future well-being and familial reunification)

(per three justices with one justice concurring in the result);[4] *In the matter of K.D.*, 744 A.2d·760 (Pa. Super. 1999) (reviewing the propriety of order compelling parent to undergo psychiatric evaluation in proceedings under the Juvenile Act, 42 Pa.C.S. §6301 et seq., and concluding order violated parent's constitutional privacy rights).

We further note that, unlike the limited exceptions to the statutory privileges at issue in these proceedings, the hallmark of constitutional analysis is to balance competing interests, and that there may well be two separate constitutional interests at stake in these proceedings, each supporting a different human privacy concern and each at different ends of the issue whether the privilege should be upheld or set aside: the Mother's individual right of privacy and the Father's right to secure, foster and maintain a familial relationship with his daughter, as well the state interest in protecting the well-being of Child. *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (noting that the liberty interest under the Fourteenth Amendment's Due Process Clause protects the fundamental right of parents to make decisions concerning the care, custody and control of their children). This contrasts with those cases where the court, when faced with the abridgement of a fundamental constitutional right, must determine whether a countervailing

4. In a concurring opinion, Justice Nigro noted that while no parent can be forced to submit to a psychological evaluation, a parent's refusal to submit to one permits the court to draw a "negative inference . . . when determining the appropriate placement of the child." *In the matter of T.R.,* 557 Pa. 99, 110, 731 A.2d 1276, 1282 (1999) (Nigro, J., concurring).

compelling state interest exists, and whether the burden imposed on the exercise of the right at stake has been implemented in a least restrictive fashion, narrowly tailored to the government's interest. *Commonwealth ex rel. Platt v. Platt,* 266 Pa. Super. 276, 292, 404 A.2d 410, 426 (1979) (Spaeth, J., dissenting).

As is evident from this brief discussion, the constitutional privacy rights at issue are significant, and complicated, but beyond what we must decide.

## CONCLUSION

In accordance with the foregoing, we find that the psychiatric and mental health records Father seeks to obtain are both subject to, and protected by, the psychotherapist-patient privilege and the MHPA, respectively; that Mother, by participating in these proceedings, has not waived the protections provided by these statutes; and that the records are not subject to disclosure. On the basis of these conclusions, Father's motion for special relief will be denied.